(Reap. Dec. 11008)

Alvin Naiman Corporation v. United States

Entry No. 2318.

(Decided June 10, 1965)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Herbert L. Warren* and *Harvey A. Isaacs,* trial attorneys), for the defendant.

NICHOLS, Judge: The merchandise involved in this appeal for reappraisement is described on the invoice as Dolomite crushed stone, and Dolomite screenings. It was exported from Canada by Niagara Crushed Stone (Humberstone), Ltd., Humberstone, Ontario, to Alvin Naiman Corporation, Cleveland, Ohio, on October 16, 1959. The crushed stone was invoiced and entered at $0.75 (Canadian currency) per net ton and the screenings at $0.38 (Canadian currency) per net ton. The stone was appraised at $2.05 (United States currency) per net ton and the screenings at $1.67 (United States currency) per net ton, both less certain charges.

The parties have agreed that export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of valuation, but plaintiff contends that the following charges should have been deducted:

Stacking at Port Colborne at $0.05 (Canadian) per ton

Trucking at Port Colborne from quarry to dock—$0.15 (Canadian) per ton

Pertinent provisions of section 402 of the tariff act, as amended, are as follows:

(b) For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included

in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\* \* \* \* \* \* \*

(f) For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, \* \* \*.

(2) The term "ordinary course of trade" means the conditions and practices which, for a reasonable time prior to the exportation of the merchandise undergoing appraisement, have been normal in the trade under consideration with respect to merchandise of the same class or kind as the merchandise undergoing appraisement.

According to a statement attached to the invoice (agreed to be the appraisement) and a stipulation of counsel, the appraiser found value by taking the prices of $2.05 per ton for the stone and $1.67 for the screenings and making certain deductions and calculations therefrom. Plaintiff's witness, Jack Naiman, testified that those prices represented the price for the material delivered by plaintiff to its customers in Cleveland, which amount was remitted by customers to plaintiff. Those figures were supplied to the appraiser by plaintiff through its customs broker. Appraisement was made as follows:

| | | |
|---|---:|---:|
| Total value of the shipment at the above prices | | $20,504.68 |
| Stacking, United States docks, 5¢ per ton | $521.70 | |
| Canada steamship charges of $0.91 per ton (including 65 cents water freight, 1 cent toll charges, 5 cents top wharfage, and 20 cents loading charge) | 10,020.86 | |
| Customs brokerage and clearance charges | 39.97 | |
| Total nondutiable charges | | 10,582.53 |
| Net duty paid value | | $9,922.15 |
| Divided by 107½% to obtain gross value less duty, which was the appraised value | | $9,229.91 |

The appraiser did not deduct the charge for stacking at Port Colborne at 5 cents per ton (Canadian) nor the charge for trucking at Port Colborne from quarry to dock at 15 cents per ton (Canadian).

It appears from the testimony of Jack Naiman, an officer of the plaintiff corporation between 1954 and 1960, that the stockholders of plaintiff and those of Niagara Crushed Stone, Ltd., were the same and that some of the officers of the former were officers of the latter. They

were so related that dealings between them were not at arms' length. Neither corporation is now in business, but stone is still being exported from the quarry. The plaintiff has ceased doing business but is still a legal entity. Niagara Crushed Stone, Ltd., became bankrupt and was purchased by Canada Steamship Lines who renamed it Port Colborne Quarries.

Mr. Naiman testified, that during the period involved here, his duties included placing orders for stone with Niagara Crushed Stone, Ltd., and that he made visits to the quarry on an average of twice a month. The crushed stone before the court was acquired by plaintiff by purchase at 75 cents (Canadian) per net ton, f.o.b. the quarry, and the screenings at 38 cents (Canadian) per net ton. The charges listed on the statement attached to the invoice accrued after the merchandise left the quarry and were for the account of the purchaser. The charge for stacking at Port Colborne was for use of two bulldozers at the dock to push the stone into more compact piles and to push it onto conveyor belts for loading. The charge for trucking was for moving the material from the quarry to the dock. The merchandise was shipped in bulk and no packaging was involved.

The witness stated that whether stone was purchased for home consumption or for export it was loaded on trucks, the trucks were driven onto a scale and weighed, and a charge made according to the type of material. The customer paid the charges accruing after the stone left the quarry. In the case of merchandise being shipped to the United States, the trucks traveled a fraction of a mile from the quarry to the dock site and dumped the load on the dock. The merchandise was weighed again at the dock and those weights were quoted on the invoice.

According to the witness, plaintiff was the only importer of this merchandise in the United States, others buying from plaintiff, but there were Canadian purchasers who purchased ex quarry. The plaintiff's customers in the United States purchased at an all-inclusive price for the material laid down on the dock in the United States.

An affidavit of Wilma Caldwell, who had been a bookkeeper and accountant in the employ of Niagara Crushed Stone, Ltd., and was subsequently employed by Port Colborne Quarries, Ltd., confirmed that the stone exported to the United States was shipped in bulk by boat from Port Colborne and that sold locally was transported by truck, and that all sales were made at the office of the company at the quarry site, at a price at the quarry, with the buyer paying all costs accruing after the stone left the quarry, whether sold locally or for exportation to the United States.

Defendant offered in evidence a report of Clifton L. Mentzer, customs agent in charge (defendant's exhibit A), and a report of Customs

Agent Kenneth R. Aschim (defendant's exhibit B). The former reports an investigation made into the market value of crushed stone imported by Alvin Naiman and shipped by Niagara Crushed Stone, Ltd. The information was not obtained from company records but was supplied from memory by various persons who had been connected with the Canadian company. The latter gives prices which various purchasers in Cleveland paid the plaintiff for stone or screenings. These vary from $1.50 to $2.10 per ton for screenings and from $2.09 to $2.35 per ton for stone.

Plaintiff relies upon the principle that a party may challenge one or more of the elements entering into an appraisement while relying upon the presumption of correctness of the appraiser's return as to all other elements. *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371; *United States* v. *Schroeder & Tremayne, Inc., et al.*, 41 CCPA 243, C.A.D. 558; *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, A.R.D. 145. Plaintiff states that it is presumed from the appraisement in this case that there is a statutory export value for the merchandise and that the delivered prices, less nondutiable charges, are the prices at which the merchandise was freely sold in Canada in the usual wholesale quantities and in the ordinary course of trade for exportation to the United States. It is claimed that since plaintiff does not challenge any of the appraiser's findings, except his failure to deduct the charges for stacking and trucking, the only issue is whether those two items are dutiable as part of the export value. Defendant contends, on the other hand, that the appraisement is not severable and cannot be reduced to components of ex-quarry cost, plus export charges, so as to permit the challenging of one or more of the elements of the appraisement. It also says that plaintiff has not established that the merchandise was freely sold at an ex-quarry price or that the price to the sole purchaser in the United States fairly reflected the market value or that the ordinary course of trade with respect to this kind of merchandise was at ex-quarry prices.

In cases where it is claimed that ex-factory prices represent dutiable value, this court has held:

* * * the extent to which ex-factory sales need be proven depends upon the method employed to invoice the goods, and the way in which the appraiser makes his return of value. If ex-factory prices and other charges are separately stated on the invoices and the appraiser's finding of value is expressed in terms of the invoice unit prices, plus the questioned charges, the appraisement is deemed to be separable. * * * Such is the case in the instance of an appraisement at ex-factory-plus-charges value, and the charges may be disputed without the necessity of proof that the ex-factory prices comply with the statutory definition of export value. * * * [*United States* v. *Supreme Merchandise Company, supra*, at pp. 716–717.]

On the other hand, when the appraisement is at undivided invoice unit values, net, packed, it has been held that the unit value was indivisible and could not be broken down outside the invoices, into components of ex-factory costs, plus export charges. *Valley Knitting Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 599, Reap. Dec. 9627. The court held that it was incumbent upon plaintiffs to prove affirmatively every material element in the basis of value upon which they relied and that their failure to show what the ex-factory prices were and whether they were the same for all purchasers prevented the court from finding a dutiable value other than the appraised value.

In *Haddad & Sons, Inc.* v. *United States*, 53 Cust. Ct. 423, Reap. Dec. 10825, the merchandise was appraised at a certain price, and it was claimed that a mathematical computation indicated that the ex-factory invoiced price, plus charges, was equivalent to the appraised value, and that, therefore, the plaintiff could rely upon the presumption of correctness as to portions of the appraisement not contested. The court held to the contrary, stating:

> In the instant case, the mere fact that the mathematical computation, as indicated, *supra*, would eventually equal the sum of the invoiced unit price, does not establish separability of appraisement. Since the appraisement is not deemed separable, plaintiff cannot rely upon the presumption of correctness as to those items not contested. It is, therefore, incumbent on the part of plaintiff to establish all necessary elements for a proper appraisement, i.e., freely offered, usual wholesale quantity, ordinary course of trade, etc. The record herein offers no such proof and is, therefore, deemed insufficient.

> It also follows that there is no presumption of correctness attaching to any of the charges set forth on the invoices and it is incumbent on plaintiff to establish that said charges are the true charges which were in fact paid. It is quite conceivable that the same total appraised value may be arrived at by utilizing various different prices or charges. The record being silent in this respect, it is, therefore, deemed insufficient to establish the inland charges. Said charges could be deductible if satisfactory proof was adduced to establish that the merchandise was freely offered at the factory at a price not including the inland charges. This, of course, is based upon the premise that the burden of proof relating to the other portions of appraisement was established.

In the instant case, the appraisement was not made by starting with an ex-quarry price and adding charges, but by working backward from a delivered price in Cleveland to a price at the dock in Port Colborne. This may be considered a mode of "ascertaining or estimating the value * * * by all reasonable ways and means." Section 500, Tariff Act of 1930. The appraiser started with an arms' length price so that his appraisal would fairly reflect the market value. Since the parties have not questioned the propriety of the method of appraisement but have stipulated that this was the manner in which the appraiser acted and have also stipulated which charges were deducted and which were not, and the amount thereof, the appraisement

is separable. *United States* v. *Gitkin Co.*, 46 Cust. Ct. 788, 794, A.R.D. 132. It follows that the plaintiff may rely upon the presumption of correctness attaching to the elements not contested.

In the instant case, the merchandise was sold for exportation only to the plaintiff. Therefore, the appraiser had to find the price at which the merchandise was sold in the ordinary course of trade to the selected purchaser at wholesale and had to determine that this price fairly reflected the market value of the merchandise. He used as the basis of his finding the delivered price in Cleveland from which he allowed certain deductions and disallowed others. The delivered price was that of "such" merchandise and "such" merchandise was in fact sold to plaintiff ex quarry and to other purchasers in Canada ex quarry. Evidence of sales in Canada may properly be considered in determining the customary trade practices in order to ascertain whether the price fairly reflects the market value. *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841.

It has recently been held that an appraisement, made on the basis of actual sales and course of sales of "such" merchandise to two selected purchasers, one of whom was the wholly owned subsidiary of the exporter, was proper. *Chr. Bjelland & Co., Inc.* v. *United States*, 52 CCPA —, C.A.D. 855 (appeal 5164, decided April 22, 1965). The court noted that segments of a particular industry may do business in different ways and that the choice of a convenient manner of doing business at some variance with others does not mean it is not in the ordinary course of trade.

The appraiser presumably found that a statutory export value of "such" merchandise existed. Therefore, he must have found that the sales to plaintiff were in the ordinary course of trade and fairly reflected the market value of the merchandise. He could have appraised on the basis of export value of similar merchandise, or United States value, or constructed value, if the basis for a value derived from sale of "such" merchandise did not exist, but he must have found that it did exist. His basic finding being so, there remained to him only the function of adjusting for nondutiable charges to make his export value. In doing this, he could not say that sales ex quarry were not in the usual course of trade, and that sales ex dock were, because he could not split up a single sale and say that in some respects it was in the ordinary course of trade and in others not. This is an impossibility like an egg that is only partly bad. If the sales had deviated from the ordinary course of trade in any significant respect, it would have been his duty to reject them altogether and base his appraisal on something else. We must assume that sales, as actually made, according to uncontroverted testimony, were ex quarry, not ex dock. When this

is so, transportation charges to the dock are nondutiable. The sales ex quarry were the statutory basis and the adjustments for nondutiable charges should have included adjustment for transportation to the dock. Given the stipulations here made, the method of appraisement here employed, the presumptions applicable to the uncontested portions of the appraisement, and the uncontroverted evidence, the conclusions follow that the appraisement was erroneous so far as it did not adjust for transportation to the dock and it should be corrected by making this adjustment. It is true there was no evidence as to whether there were other Dolomite producers exporting to the United States. However, the appraisement could not have been based on sales by other producers, if any. The record shows it was based on sales of the merchandise at bar. And if hypothetical other producers sold in the ordinary course of trade ex dock and not ex quarry, the appraiser could not utilize this fact as a mere basis for an adjustment. He cannot assemble an export value partly out of incidents of sales of "such" merchandise and partly out of incidents of sales of "similar" merchandise.

On the record presented, I find as facts:

1. That the merchandise consists of Dolomite crushed stone and Dolomite screenings, exported by the producer, Niagara Crushed Stone (Humberstone), Ltd., Humberstone, Ontario, on October 16, 1959, to Alvin Naiman Corporation, at Cleveland, Ohio.

2. That said merchandise was invoiced and entered at the ex-quarry purchase prices, namely $0.75 (Canadian currency) per net ton for the Dolomite crushed stone and $0.38 (Canadian currency) per net ton for the Dolomite screenings.

3. That said merchandise was appraised at $2.05 (United States currency) per net ton for the Dolomite crushed stone and $1.67 (United States currency) for the Dolomite screenings (which were delivered prices in Cleveland), less the following charges which were included in the delivered prices: Stacking, United States docks, $0.05 per ton; Canada Steamship charges, $0.91 per ton; and clearance and handling fees totaling $39.97, and less United States duty paid on entry.

4. That the appraiser did not deduct the following charges which were also included in the delivered prices: Trucking at Port Colborne from quarry to dock, $0.15 (Canadian currency) per net ton and stacking at Port Colborne $0.05 (Canadian currency) per net ton.

5. That, at the time of exportation, the producer of the merchandise in issue sold said merchandise for exportation to the United States to the plaintiff herein only; that such sales and sales for home consmption in Canada were at ex-quarry prices.

I conclude as matters of law:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of valuation of the within merchandise.

2. That the appraiser may not calculate said value partly out of incidents of sale of "such" merchandise and partly out of incidents of hypothetical sales of "similar" merchandise.

3. That the export values of the within merchandise are $2.05 (United States currency) per net ton for the Dolomite crushed stone and $1.67 (United States currency) for the Dolomite screenings, less the following charges: Stacking, United States docks, $0.05 per ton; Canada Steamship charges, $0.91 per ton; clearance and handling fees totaling $39.97; trucking at Port Colborne from quarry to dock, $0.15 (Canadian currency) per net ton; and stacking at Port Colborne, $0.05 (Canadian currency) per net ton, and less United States duty paid on entry.

Judgment will be rendered accordingly.