(A.R.D. 239)

F. B. VANDEGRIFT & CO., INC. *v.* UNITED STATES

Entry No. C 16886.

Second Division, Appellate Term

(Decided May 16, 1968)

*Allerton deC. Tompkins* for the appellant.
*Edwin L. Weisl, Jr., Assistant Attorney General* (*Steven R. Sosnov,* trial attorney), for the appellee.

Before FORD, RICHARDSON, and LANDIS, Judges

FORD, Judge: This application for review was filed by the importer against the decision and judgment of the trial judge in a reappraisement proceeding which was reported in *F. B. Vandegrift & Co., Inc.* v. *United States*, 56 Cust. Ct. 715, R.D. 11169.

The merchandise involved herein consists of two kinds of linoleum which were appraised on the basis of export value as said value is

defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165. The importer-appellant herein does not contest the basis of appraisement, export value, nor the trade and cash discount of 10 percent and 5 percent allowed, nor the allowance for ocean freight and insurance, nor the addition for special packing. The amount of such appraisement, however, is contested. The merchandise involved was described, appraised, and claimed as follows:

|  | Appraised (per lineal yard) | Claimed (per lineal yard) |
|---|---|---|
| Natural Tan No. 2 B 300 | $3.05 | $2.54 |
| Sea Green 25/2 B 312 | 3.31 | 2.91 |

The trial court sustained the appraised values basing its decision on the ground that the price at which the involved merchandise was sold to the importer was not "freely offered." This finding is substantiated by the affidavit received in evidence as plaintiff's exhibit 3, wherein the affiant, John Houghton, in clause 5, states:

\* \* \* Had there been such an approach from a responsible company prepared to give terms similar to those given by the Dodge Cork Company Inc. Barry, Ostlere & Shepherd Limited would at all times have been prepared to negotiate prices at the level specified in Appendix A I.

Notwithstanding the changes in the valuation statute by virtue of the Customs Simplification Act of 1956, *supra*, prices arrived at by negotiation or bargaining are not freely sold. *Aceto Chemical Co., Inc.* v. *United States*, 51 CCPA 121, C.A.D. 846; *United States* v. *North American Asbestos Corp.*, 48 CCPA 153, C.A.D. 783; *United States* v. *Mexican Products Co.*, 28 CCPA 80, C.A.D. 129.

Accordingly, we are in agreement with the trial judge that the price at which the importer purchased the involved linoleum was not freely sold.

While the language added by the Customs Simplification Act of 1956, *supra*, includes "in the absence of sales, offered for sale," this change cannot inure to the benefit of the position taken by the importer herein that the manufacturer would have been willing to negotiate sales to others. Even if we were to find, and we do not do so, that the manufacturer would be willing to sell and if that fact were communicated to the trade, and if the prices were the same as contended by appellant and were not based upon negotiation, the court could not consider evidence of offers as there were actual sales. Aside from the fact that there were actual sales, it has uniformly been held that willingness to sell does not constitute satisfactory proof of offers for

sale within the contemplation of the statutory definition. *Trans Atlantic Shipping Co., Inc. (Absorbo Beer Pad Co. Inc.)* v. *United States*, 28 CCPA 19, C.A.D. 118; *Acme Steel Company* v. *United States*, 48 Cust. Ct. 497, Reap. Dec. 10135, affirmed *United States* v. *Acme Steel Company*, 50 Cust. Ct. 529, A.R.D. 152, affirmed *Same* v. *Same*, 51 CCPA 81, C.A.D. 841. The statutory language "or in the absence of sales" precludes the court from considering even *bona fide* offers when, in truth and in fact, there are actual sales. *Haddad & Sons, Inc.* v. *United States*, 56 Cust. Ct. 792, A.R.D. 205.

In view of the foregoing, we are of the opinion that the appellant has failed to overcome the presumption of correctness attaching by law to the appraised value.

It is to be noted at this juncture that appellant contends the sales were at arm's length and, hence, it is not a selected purchaser within the definition contained in section 402(f)(1)(B) but falls within the definition in section 402(f)(1)(A). The provisions of both read as follows:

Section 402(f) of the Tariff Act of 1930, 46 Stat. 708, as amended by the Customs Simplification Act of 1956, 70 Stat. 944:

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

Hence the question of selected purchaser considered by the trial court is not before us. The contention of appellant that the court below imposed additional restrictions, other than those set forth, *supra*, by observing that appellant was required to advertise and maintain large inventories is untenable. The decision below does not in our opinion make a finding that it was necessary to maintain large inventories, provide promotional material, and advertise in order to obtain the contended freely offered price. The finding of the trial court was based upon the failure to communicate its so-called offer to any customer. With this finding, we are in agreement.

The court below in addition to the foregoing considered the question of "usual wholesale quantity." Appellant relies strongly on appeal

as it did below on this question particularly in view of the definition of that term which reads as follows:

[SEC. 402(f)(5)] The term "usual wholesale quantities", in any case in which the merchandise in respect of which value is being determined is sold in the market under consideration at different prices for different quantities, means the quantities in which such merchandise is there sold at the price or prices for one quantity in an aggregate volume which is greater than the aggregate volume sold at the price or prices for any other quantity.

In view of our conclusion, *supra*, that appellant at the outset has failed to establish a freely sold price of 50 or more rolls, we deem it entirely unnecessary to consider this phase of the case. However, in view of the finding of the trial court, we make certain observations with respect to the above definition.

The record clearly establishes that the importer herein purchased approximately 92 percent of all linoleum imported from the manufacturer involved herein. It has also been established that the so-called 50 roll price which the importer received was based not solely on the purchase of 50 rolls. In fact, the importation at bar covers 45 rolls, but was based on past purchases by the importer, as the witness indicated they had proven themselves to the manufacturer.

The language utilized by section 402(f)(5) we think is more comprehensive than appellant cares to admit. This definition is based first on the premise that the price varies according to quantity. Only after that determination is made would the court consider the question of the total aggregate volume.

Even if the total aggregate volume were to be considered, the record herein is lacking of any evidence of the individual quantity which when combined for an elapsed period of time would be representative of the total aggregate volume and as such be considered the "usual wholesale quantity."

In the case of *Independent Cordage Co., Inc.* v. *United States*, 59 Cust. Ct. 718, R.D. 11380, a similar though not identical situation arose. The court therein made the following statement with respect to "usual wholesale quantity":

In ascertaining the usual wholesale quantity, consideration must, as the plaintiff contends, be given to an elapsed time period. However, an examination covering such a period of time must focus on that price for which merchandise is sold in equivalent *individual* quantities, which when combined form the greatest aggregate volume, and not, as the plaintiff maintains, on the total volume of goods without regard to the quantities in which individual sales were made. It must be the price for one quantity in an aggregate volume "which is greater than the aggregate volume sold at the price or prices for any other quantity." Instead of a "price-for" concept, as required by the statute, plaintiff is attempting to substitute a "price-when" concept, that is, a price dependent on the happening of a certain event, to wit, purchases ac-

cumulating in any quantity to a total in excess of 500,000 pounds. If volume alone were considered to be the controlling factor, *"usual wholesale quantities"* [emphasis added] is a misnomer, and the statute need merely have recited that the price for the greatest quantity sold within a reasonable period represents the value of the merchandise under consideration.

Historically, it has long been the accepted principle of law that where prices do not vary with the quantity purchased, the question of usual wholesale quantity is not involved. *Jenkin Brothers* v. *United States*, 25 CCPA 90, T.D. 49093. The record herein does not, in our opinion, satisfactorily establish that the so-called 50 roll price based upon past performance amounts to a price which varies by virtue of different quantities. The record, in fact, clearly establishes the contrary. The following statements contained in the record confirm this fact:

CROSS EXAMINATION

BY MR. ISAACS:

Q. Mr. Dodge, directing your attention to the invoice in the official papers herein, the figures 0/29027 of 28/11/60, and 0/28036 of 10/5/60, and 0/26974 of 27/10/59, do they refer to your purchase order numbers?—A. I think they do.

Q. Mr. Dodge, I believe you stated on direct examination that the prices you obtained were as a result of the quantity of merchandise which you purchased from Barry Ostlere & Shepherd, is that correct?—A. That is correct.

Q. How were those prices arrived at? They were arrived at by negotiation, you said. Was it dependent upon an annual dollar volume basis?—A. Yes.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

Q. In other words, the only person who could receive the prices which you received were those who did an equivalent amount of business in the previous year?—A. That was my understanding.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

JUDGE NICHOLS: The court would like to ask one question. The testimony that you are now giving is that the size of the individual shipment had no connection with the overall volume of your transactions with this company?

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

&ast; &ast; &ast; By the time 1960 had come along, the 50 rolls business did not play such an important part because of our relationship. We had proven ourselves. When they originally approached us, they talked in terms of 50 rolls, and in talking to a new person, they would talk in terms of 50 rolls, but it became less important because as we were dealing in hundreds and thousands of rolls, and therefore they knew what their relationship was with us.

As we find no substantial evidence to support the value contended for by appellant, we are unable to find an export value for the merchandise different from the value returned by the appraiser.

On the record before the court, we find as facts:

1. That the merchandise involved herein consists of two kinds of linoleum, natural tan and sea green, exported from the United Kingdom on or about December 7, 1960, and entered at the port of Philadelphia on December 30, 1960.

2. That the natural tan was appraised at $3.05 per lineal yard, and the sea green at $3.31 per lineal yard, both less trade and cash discounts of 10 percent and 5 percent, less ocean freight and insurance, plus special packing.

3. That at or about the time of exportation of the involved merchandise, such or similar merchandise was sold to Dodge Cork Co., Inc., at $2.54 per lineal yard for the natural tan and $2.91 per lineal yard for the sea green, but these prices were set by negotiation and the merchandise was not freely sold, or offered for sale to anyone at said prices.

4. That at or about the time of exportation of the involved merchandise, such or similar merchandise was freely sold in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, at $3.05 per lineal yard for the tan and $3.31 per lineal yard for the sea green, less trade and cash discounts of 10 percent and 5 percent, c.i.f. American port of entry.

5. That the cost of special packing for the merchandise at bar was $25.20.

We conclude as matters of law:

1. That appellant has failed to make out a *prima facie* case on the basis of its claimed export value.

2. That the presumptively correct appraised values on the basis of export value have not been overcome.

3. That export value, as that value is defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for determining the value of the merchandise involved herein.

4. That said value is represented by the appraised values.

The decision and judgment of the trial court are, therefore, affirmed. Judgment will be entered accordingly.