(R.D. 11556)

THE A. W. FENTON CO., INC. v. UNITED STATES

Entry No. 5057, etc.

(Decided July 2, 1968)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Glenn E. Harris*, trial attorney), for the defendant.

LANDIS, Judge: The overriding issue for determination in these appeals for reappraisement (there are seven consolidated for trial) is the dutiable export value (section 402, Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 70 Stat. 943, T.D. 54165) of crushed dolomite, a kind of stone, exported from Canada in seven shipments during the period April 20, 1962, to December 10, 1964. There are connected issues involving alleged appraised c.i.f. prices and appraised nondutiable and dutiable charges which I shall take up in this opinion.

The stone was shipped in sizes designated on the invoices as 3's, 4's, 6's, and screenings. It was exported by Port Colborne Quarries, Ltd. (hereinafter referred to as Port Colborne), Port Credit, Ontario, Canada, on invoice to Breckling Concrete, Ltd., Cleveland, Ohio (R66/3457); Osborne Concrete Stone Co., Grand River, Ohio (R66/3793), and Ontario Stone Corp., Cleveland, Ohio (hereinafter referred to as Ontario), in the remaining five reappraisements. Plaintiff is a customs broker and serviced entry of the stone at the Cleveland port for the importers.

The official papers, consisting of official customs entry and connected forms with supporting invoices, are in evidence. (R.2.) They set the tone of the dispute. Each entry is supported by three invoices, a commercial invoice, special customs invoice, and so-called *pro forma* invoice. The commercial invoice recites the name of the buyer, terms of payment, size stone, tonnage, unit price per net ton, and extended totals. The special customs invoice (C.F. 5515), which also shows a

unit price per net ton (not always the same as the commercial invoice unit price) recites that the price is a c.i.f. duty paid price "including charges as shown on back" and there identified as trucking, stacking, loading vessel, wharfage, and water transportation charges. (A small canal toll charge identified on the special customs invoice in R66/3457 is not a material issue in these appeals.) The *pro forma* invoice is a compilation of information from the commercial, special customs invoices, and perhaps other sources (there are some discrepancies in the unit prices recited in the three invoices, see R66/3526, R66/3505, and R66/3793) apparently prepared by the customhouse broker to support an entered value at the *pro forma* c.i.f. duty paid price less the included charges, less broker's handling fee and included duty.

The appraiser advanced the entered values, noting the advance in red ink on the *pro forma* invoices in substantially the following form "Appraised at U.S. [price] per net ton, less NDC's as noted, less handling fee, less included duty." [1] He clarified his quoted notation with additional item red ink notations marking item amounts for loading, wharfage, and transportation charges with the familiar letter code "ND" for nondutiable; checking the nondutiable item amounts he approved for handling fee and included duty, and marking the item amounts for trucking and stacking charges with the letter code "D" for dutiable.

Discounting discrepancies, to which attention was called at the trial, between the entered values claimed in plaintiff's rule 15(d) statement and the claimed commercial invoice prices voiced at trial, plaintiff's case comes down to claim that the correct export value for the stone is the commercial invoice unit price, less the nondutiable charges, handling fee and included duty noted by the appraiser, less the amount of trucking and stacking charges. (Plaintiff's brief, page 3.)

Defendant, in its rule 15 statement, defends the appraised values of the stone as noted on the official papers, and, alternatively, claims the *per se* appraised price, per net ton, without any deductions. I assume that it was an oversight that defendant failed to make the same alternative claim as to the stone screenings in R66/3465. The

---

[1] The various invoice and appraised unit prices, per net ton, exclusive of charges, are as follows:

| Reap. No. | Export Date | Merchandise | Commercial | Special | Pro forma | Appraised |
|---|---|---|---|---|---|---|
| R66/3457 | 4/20/62 | 4's | $2.10 | $2.10 | $2.10 | $2.10 |
| R66/3465 | 10/28/62 | 6's | 1.92 | 1.92 | 1.92 | 2.15 |
| | | Screenings | 1.55 | 1.55 | 1.55 | 1.65 |
| R66/3524 | 12/ 8/62 | 4's | 1.92 | 1.92 | 1.92 | 2.10 |
| R66/3526 | 4/15/63 | 3's, 4's | 1.92 | 1.92 | 1.92 | 2.05 |
| | | Screenings | 1.56 | 1.55 | 1.55 | 1.65 |
| R66/3505 | 12/13/63 | 6's | 1.87 | 1.92 | 1.92 | 2.20 |
| | | Screenings | 1.51 | 1.56 | 1.55 | 1.65 |
| R66/3669 | 4/ 7/64 | 4's | 1.92 | 1.92 | 1.92 | 2.15 |
| R66/3793 | 12/10/64 | 3's, 4's | 2.05 | 1.92 | 1.92 | 2.15 |
| | | Screenings | 1.70 | 1.57 | 1.56 | 1.70 |

alternative claim is a question of law which I shall take up after considering plaintiff's claims.

Before weighing the proofs of record, some discussion is necessary on plaintiff's argument that the appraisements are separable as to the trucking and stacking charges noted as dutiable in the appraisements. The separability rule is a framework of convenience for the analysis of disputed appraisements. *United States* v. *Chadwick-Miller Importers, Inc., et al.*, 54 CCPA 93, C.A.D. 914. "That the plaintiff has the burden, in reappraisement, of establishing by competent proofs each and every *disputed* element of value, but does not need to prove that which is not disputed, is the essence of the separability rule." [Emphasis quoted.] *United States* v. *Gehrig, Hoban & Co., Inc.*, 56 Cust. Ct. 782, 789, A.R.D. 204. The appraisements, which I have taken care to detail above, are quite clear as to what the appraiser did. They bear analysis in the context of what plaintiff disputes.

Plaintiff accepts the presumptively correct appraised prices, less the noted nondutiable charges, handling fee and included duty (28 U.S.C. § 2633) for the stone designated 4's in reappraisement R66/3457 and the stone designated screenings in reappraisement R66/3793. As to said stone, in those reappraisements, plaintiff contests only the invoice item trucking and stacking charges noted dutiable in the appraisements. The dispute as to the stone in the balance of these reappraisements, including that stone designated 3's and 4's in reappraisement R66/3793, where plaintiff contests both the appraised prices and the dutiable noted invoice item trucking and stacking charges is something else again. For it mixes and raises entirely different issues to which plaintiff's rather sweeping statement that the "trucking and stacking in Canada is separable from any other issue" in these consolidated reappraisements will not stick. (Plaintiff's brief, page 14.) I agree that the appraisements are separable. And to the extent properly in issue, as in the case of the stone in R66/3457 and the screenings in R66/3793, plaintiff can properly rely on the presumptively correct appraised price and contest the disputed trucking and stacking charges. *United States* v. *Gehrig, Hoban & Co., Inc.*, 54 CCPA 129, C.A.D. 924; *Alvin Naiman Corporation* v. *United States*, 54 Cust. Ct. 705, Reap. Dec. 11008. But where plaintiff contests basic appraised prices, dispute as to charges becomes, in my opinion, quite irrelevant since the disputed price "bring[s] into question the balance of the appraisement" represented by dutiable and nondutiable charges. *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, 723, A.R.D. 71.

Plaintiff cannot have it both ways, that is, disavow the presumptively correct appraised price and rely on the separability rule to

contest the appraised price and clarifying notations in a piece-meal fashion. Price is the very stuff and foundation of appraisement. Where price is in issue plaintiff can no longer rely on the presumption that appraised dutiable and nondutiable charges are correct, for we do not know that on a price different from the appraised price, the appraiser would have found any applicable charges or even the same amount of charges. *S. S. Kresge Co. et al.* v. *United States*, 45 Cust. Ct. 469, Reap. Dec. 9778 (discussing the same point in a different factual context). In the *Alvin Naiman* case, *supra*, on which plaintiff so strongly relies, the appraisement was separable and plaintiff accepted the appraised price limiting the issue to only specified appraised dutiable charges. Plaintiff here, as I have said, contests the appraised prices. This alone distinguishes the *Alvin Naiman* case. It is on the issues thus framed, trucking and stacking charges in R66/3457 (stone designated 4's) and R66/3793 (stone designated screenings) and price as defined in section 402, as amended, in the balance of these appraisements, that I review this record.

Plaintiff's case rests on the testimony of two witnesses and 13 exhibits. Defendant moved in evidence the commercial invoices attached to and part of the official entry papers in appeals for reappraisement R66/3631, R66/3476, R66/3495, and R66/3496 now pending before this court. (R.68, 71.) Defendant's brief renews objections made on trial, that exhibits 5 through 13, are irrelevant to the issues of price and dutiable charges in these reappraisements, and should not be received. It moves that they be stricken. I find, as I shall discuss, *infra*, that the particular exhibits do not help plaintiff's case. However, defendant's reference to the exhibits to support argument in its brief (page 7) attests that they are not so irrelevant as to warrant their exclusion. The motion to strike is, therefore, denied.

Export value, which the parties agree is the proper basis for appraisement, is defined in section 402, as amended, as follows:

(b) EXPORT VALUE.—For the purpose of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

The term "freely sold or, in the absence of sales, offered for sale" is additionally defined in section 402(f)(1) to mean sold or, in the absence of sales, offered:

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which (i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

The shipments in these reappraisements, with the exception of the invoice shipment to Breckling Concrete, Ltd. (R66/3457), all stem from an agreement (exhibit 1) between Port Colborne and Ontario, effective September 1962. Quite briefly, and insofar as pertinent, the agreement provides that Ontario, as agent soliciting orders for stone produced by Port Colborne, shall sell a minimum of 1,000,000 tons a year in the United States, under terms specified in the agreement, to be shipped by Canada Steamship Lines, Ltd. (Port Colborne's parent company) and Reoch Steamships, Ltd. It further ties Ontario not to sell any competitor's stone in excess of a certain amount without Port Colborne's written consent, and states that sales shall be either in full cargo lots, delivered directly to the customer at Port Colborne duty paid invoice to the solicited customer or, by truck lots from stone delivered and dumped by Port Colborne on Ontario's dock in Cleveland.

The agreement goes on to set the duty paid price between Port Colborne and Ontario at $1.55 per ton, for stone designated B–119 and screenings, and $1.92 per ton for stone designated 2's, 3's, 4's, and 6's, all United States funds, and specifies that the prices are renegotiable at the beginning of each calendar year.

Additional provisions state that Ontario's commission on solicited cargo lots is the difference between the agreed price to Ontario and the invoice price to the solicited customer, said commission to be credited against the price of stone shipped to Ontario's dock for sale in truck lots; that Ontario pay for stone delivered to its dock immediately when sold and payment received, less commissions presumably earned and credited on sales in cargo lots. Port Colborne in turn agreed to pay Ontario an additional commission of 5 cents per ton, Canadian funds, on cargo lots Port Colborne sold for consumption in Canada at prices determined by Port Colborne, again in the form of a credit against stone delivered to Ontario on dock at Cleveland.

Finally, for purposes here, part 4 of the agreement recites as follows:

B. Shipments of stone by Port Colborne direct to customers on orders solicited by Ontario shall at all times be subject to. Port Colborne's right to accept or reject such orders as Port Colborne may, in its sole discretion, determine; provided that Ontario may submit

to Port Colborne a list of prospective customers and secure in advance Port Colborne's approval of direct shipments to such customers. However, Port Colborne reserves the right to reject such orders at any time even though the customer's name does appear on the said advance list for direct shipments. In the event that Ontario shall solicit and obtain orders for direct shipments to customers not approved by Port Colborne in advance, Port Colborne will advise Ontario of the acceptance or rejection of such order within 48 hours of Port Colborne's receipt of such order.

All of these shipments were to Ontario on dock Cleveland, excepting the shipments to Breckling Concrete, Ltd. (R66/3793) and Osborne Concrete Stone Co. (R66/3793). Plaintiff's issue as to price runs to the on dock shipments to Ontario and the stone designated 3's and 4's invoiced and delivered to Osborne Concrete Stone Co. in R66/3793. The issue as to transportation and stacking charges is limited to the stone in R66/3459 and the screenings in R66/3793. For the reasons I stated earlier, those issues require separate consideration.

I decide this case on settled principles of reappraisement law without reaching many of the well grounded points expounded in defendant's pervasive brief of 84 pages. Whether Ontario in fact purchased the stone or merely acted as Port Colborne's agent, a relationship much argued in the briefs, I do not find it necessary to decide. It is apparent, as plaintiff says, that the appraised values are based on Port Colborne's sales or offers for sale to buyers in the United States other than Ontario. The appraiser could not assemble an export value from the price at which producers, other than Port Colborne, sold similar stone for export to the United States and the charges invoiced by Port Colborne. *Alvin Naiman Corporation* v. *United States*, *supra*, at page 712. It is these presumptively correct appraisements (28 U.S.C. § 2633) at a price at which the stone was freely sold or offered for sale to all purchasers at wholesale that flaws plaintiff's claim of an export value at the commercial invoice price to Ontario. Ontario may well be, as plaintiff contends, a selected purchaser but, on this record, it is only a selected purchaser as to price. Export value at the wholesale price to a selected purchaser which fairly reflects the market value, is an alternative available only in the absence of sales or offers for sale at a price to all purchasers at wholesale. *Aceto Chemical Co., Inc.* v. *United States*, 51 CCPA 121, 127, C.A.D. 846. Nowhere in this record do I find evidence that, in the relevant export period, Port Colborne sold only to Ontario. *H. M. Young Associates, Inc.* v. *United States*, 60 Cust. Ct. 842, R.D. 11517. Plaintiff suggests that the agreement is evidence of the fact. The Ontario shipments were all made pursuant to the agreement, but I cannot find anything in the agreement which precludes Port Colborne from selling to other purchasers.

The appraiser must have found that the merchandise was freely sold or offered for sale to the less favored purchasers at the higher price and that it met the other specifications for statutory export value. His findings must stand unless the evidence refutes them. Plaintiff has not tried to show that the merchandise was not freely sold or offered to all purchasers at that price. [*F. B. Vandegrift & Co., Inc.* v. *United States,* 56 Cust. Ct. 715, 720, Reap. Dec. 11169, affirmed *Id.* v. *Id.,* 60 Cust. Ct. 965, A.R.D. 239. (See also *BMC Trading Corp. et al.* v. *United States,* 577 Cust. Ct. 662, R.D. 11232, affirmed *Id.* v. *Id.,* 60 Cust. Ct. 961, A.R.D. 238.)]

The price to Ontario is vulnerable on still another count. Port Colborne, in the relevant export period, invoiced and shipped to customers solicited by Ontario in cargo lots at the price Ontario negotiated with the customer. Even if I found Ontario was a selected purchaser as to those cargo lots, it would not help plaintiff. The agreement, part 4, *supra,* reserving to Port Colborne the right to accept or reject orders solicited by Ontario, is a restriction on "the disposition and use" of the stone by Ontario which I find interdicts the price to Ontario under section 402 (f) (1) (B). *Cf. Chr. Bjelland & Co., Inc.* v. *United States,* 52 CCPA 38, 44, C.A.D. 855.

Plaintiff cites the *Bjelland* case to support argument that if Port Colborne freely sold to all purchasers at wholesale and also to Ontario, then the sales to Ontario were in sufficient substantial volume to constitute an "ordinary course of trade" with Ontario at a viable statutory export price. The *Bjelland* case merely recognized that "segments of a particular industry may deal under different conditions" (52 CCPA at page 45) "in the ordinary course of trade." It did not hold that one segment, to wit, Port Colborne, could deal under different conditions "in the ordinary course of trade."

Plaintiff's proofs are equally insufficient on the separable issue of transportation and stacking charges in R66/3457 and R66/3793 (screenings). There is no proof that Port Colborne freely sold or offered the stone for sale for export to the United States ex-quarry, or, as it were, at a price ex-quarry, without the transportation and stacking charges. *Cf. United States* v. *Bud Berman Sportswear, Inc.,* 57 Cust. Ct. 733, A.R.D. 211, affirmed, *Id.* v. *Id.,* 55 CCPA 28, C.A.D. 929; *United States* v. *Chadwick-Miller Importers, Inc., et al.,* 54 CCPA 93, C.A.D. 914. At best plaintiff has proved that the stone was available, for consumption in Canada, in truck lots, ex-quarry, for delivery by truck in Canada at prices posted at Port Colborne's quarry. (Exhibit 11.) How the merchandise was sold or offered for sale and consumption in Canada is not probative of how it was sold or offered for sale for export to the United States.

The testimony of Mr. Earl Dewar, Port Colborne's accountant, on sales and offers ex-quarry Canada, is not of a kind I can rely on. First Mr. Dewar testified that he did not know if the posted ex-quarry price was available to all purchasers (R. 44), then, led on by counsel, he hedged and stated that he did not know why it would not be available to all buyers at the posted prices. (R.46.) Mr. Carl Barricelli, president of Ontario, testified "no question about it" (R. 83) Ontario could have bought ex-quarry Canada, but preferred a delivered duty paid price. Mr. Barricelli's testimony is some proof that Ontario could have negotiated a price ex-quarry. It does not substantially prove that Breckling Concrete, Ltd., whose shipment was totally unrelated to Ontario, could have bought ex-quarry, or that Osborne Concrete Stone Co. could have bought ex-quarry. If, indeed, the shipment to Osborne Concrete Stone Co. was a sale to Ontario, then it is tainted by the same restriction I spoke of above under section 402(f)(1)(B).

For the reasons stated, plaintiff has not overcome the presumption that the appraised values are correct.

There remains to consider defendant's alternative claim that, as a matter of law, the correct dutiable export value is the appraised price without the item deductions noted by the appraiser. That price, it may be noted, is a duty paid price. The deductions noted in these appraisements are "loading," "wharfage," "water transportation," "handling fee," and "included duty." They are presumably charges which accrued subsequent to the time when the stone was in the principal market "packed ready for shipment to the United States." (Section 402(b), as amended.) Defendant has devoted some 30 pages of its brief to argue the point.

Defendant's alternative claim that export value is the duty paid price without any deductions is positioned on the definition in section 402(b), as amended, which makes no provision for "deduction of anything from price." *American Commercial, Inc.* v. *United States*, 40 Cust. Ct. 690, 692, Reap. Dec. 9072. What defendant asks is a judgment of export value higher than the appraised values in these reappraisements. Defendant makes the alternative claim notwithstanding the collector did not appeal for reappraisement (19 U.S.C. § 1501) and accepted the appraised values. As a matter of first impression, I would have thought defendant's alternative claim to be new matter, proper in defense of plaintiff's claimed values, but on which defendant could not receive an affirmative judgment, the same as the law which prevails in protest classification cases before this court. *United States* v. *Jacobson & Sons Co.*, 10 Ct. Cust. Appls. 191, T.D. 38551; *Innis Speiden & Co.* v. *United States*, 14 Cust. Ct. 121, C.D. 924. Our court of appeals has held, however, in at least one reappraisement case, that

defendant is not precluded from receiving judgment of value higher than the appraised value. *Arkell Safety Bag Co.* v. *United States*, 24 CCPA 26, T.D. 48307. I have found no decision to the contrary, and I abide the decision of the appeals court here.

I am not going to gainsay that the statute does not provide for any deductions from price as defined in section 402(b), as amended, or the force of defendant's argument, tracing and discussing the historical development of the export value statute in the various tariff acts, the judicial precedents with respect thereto, and the dicta expressed in various opinion decisions on deducting charges from price in appraisement on export value basis. *American Commercial, Inc.* v. *United States, supra; Plywood & Door Manufacturers Corporation* v. *United States*, 44 Cust. Ct. 541, Reap. Dec. 9581, affirmed, *United States* v. *Plywood & Door Manufacturers Corporation*, 46 Cust. Ct. 797, A.R.D. 133. But as a matter of law, and I avert to the judicial decisions defendant itself cites, charges which accrue subsequent to the time when the merchandise is in the principal market, "in condition, packed ready for shipment to the United States" have been held nondutiable in valuation on export value basis. *The John Shillito Company* v. *United States*, 5 Treas. Dec. 555, T.D. 23851; *United States* v. *Samuel Shapiro & Co. et al.*, 65 Treas. Dec. 1650, Reap. Dec. 3268; *John A. Steer & Co.* v. *United States*, 30 Cust. Ct. 504, Reap. Dec. 8196, cited and quoted with approval in *United States* v. *Paul A. Straub & Co., Inc.*, 41 CCPA 209, C.A.D. 553. See also *United States* v. *The Heyman Co., Inc.*, 50 Cust. Ct. 564, A.R.D. 157. This general principle of law "has had the sanction of judicial approval over the course of the years since 1890." *Luckytex, Ltd.* v. *United States*, 56 Cust. Ct. 575, 579, Reap. Dec. 11119. Customs administrators have acceded to the above principle as their failure to contest, section 1501, *supra*, the price in these reappraisements illustrates. It is anomalous that the defendant now comes and seeks, as a matter of law, to overturn appraised nondutiable charges which, as a matter of law, are presumptively correct both as to plaintiff and defendant. 28 U.S.C. § 2633. Thus put, and considering there is no proof of the true substance of the appraised prices, aside from the presumptions, I am of opinion that the appraisements are insulated to claim and argument of defendant that they are wrong as a matter of law. Defendant, to put it another way, has selected the wrong appraisements to make its case for an export value, without deductions.

In close, I find nothing strained in the existing judicial construction that charges which accrue after merchandise is in the principal market packed ready for shipment to the United States are not part of dutiable export value as defined in section 402(b), as amended.

Defendant's contention that the statute does not provide for any deductions, in some respects, begs the question of what the statute does say. If the test of time has any validity, the judicial construction has achieved a substantial fairness which Congress and those responsible for the administration of section 402 have undoubtedly recognized. The construction has survived reenactment of the export value statute without substantial change, and it is a settled principle that "* * * interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes are deemed to have received congressional approval * * *." *United States* v. *Correll et ux.*, 389 U.S. 299, 305.

I find as facts:

1. That the merchandise of these appeals for reappraisement consists of crushed dolomite (stone), invoiced as 3's, 4's, 6's, and screenings, exported to the United States by Port Colborne Quarries, Ltd., Canada, during the period April 20, 1962, to December 10, 1964.

2. That the stone was shipped to Breckling Concrete, Ltd., in reappraisement R66/3457; to Ontario Stone Corp. in reappraisements R66/3465, R66/3524, R66/3526, R66/3505, R66/3669, and to Osborne Concrete Stone Co. in R66/3793.

3. That the stone was appraised on export value basis, section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

4. That the stone was appraised at various prices, per net ton, less invoice amounts for nondutiable charges, less invoice amounts for handling fee and included duty noted by the appraiser, and that the appraiser noted the invoice amounts for trucking and stacking charges as dutiable.

5. That the appraised values represent the price at which the stone in these reappraisements was freely sold to all purchasers at wholesale as defined in section 402(b), as amended.

6. That there is no evidence, that at the time Port Colborne Quarries, Ltd., shipped or sold the stone to Ontario Stone Corp. for export to the United States it did not also sell or offer to sell such stone for export to the United States to all purchasers at wholesale at the appraised values.

7. That there is no probative evidence that Port Colborne Quarries, Ltd., freely sold or offered to sell the stone ex-quarry, Canada, for export to the United States, without the transportation and stacking charges noted dutiable by the appraiser.

I conclude as a matter of law:

1. That export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956,

is the proper basis for determining the value of the stone in these reappraisements.

2. That the proper amount of export value for the stone in these reappraisements is the price at which the stone was freely sold or offered for sale to all purchasers at wholesale as defined in section 402(b), as amended, and section 402(f)(1)(A).

3. That the appraised export values in these reappraisements are presumptively correct and there is no evidence of a different statutory export value, as defined in section 402(b), as amended.

4. That the export value of the stone in these reappraisements is the appraised values.

Judgment will be entered accordingly.