**JOSEF MFG., LTD.**

v.

**UNITED STATES.**

**R.D. 11616; Reappraisements R67/5062 and R67/5063.**

United States Customs Court.

Jan. 16, 1969.

Barnes, Richardson & Colburn, New York City (Joseph Schwartz, New York City, of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Harold L. Grossman, New York City, trial attorney), for defendant.

RAO, Chief Judge:

The merchandise involved in these appeals for reappraisement consists of woven rayon dresses exported by Josef Mfg., Ltd., Montreal, Canada. In the case of R67/5062, it was exported on or about January 18, 1967, to Samuel Murrow & Company, Chicago, and in the case of R67/5063, on or about January 25, 1967, to a purchaser known as Martha, located in Palm Beach, Florida.

The dresses were invoiced at various unit prices which were c. i. f. delivered prices, all charges, freight and duty included. They were entered and appraised at the invoiced unit prices, less allowances for freight, entry fee, and duty.

The parties are in agreement that the dresses are not included on the Final List, 93 Treas. Dec. 14, T.D. 54521, and that export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of appraisement.

At the trial, plaintiff called Harold Josephson, secretary-treasurer and general manager of Josef Mfg., Ltd. He testified that his duties include purchasing, sales policy, styling, and production, and that he is in charge of all the operations of the company. The business of the company is the manufacture of better ladies' wearing apparel, which it sells in the United States to the better department stores and

finer specialty shops. It is offered to United States customers through a manufacturer's agent who deals out of a showroom in New York City, and at the firm's showroom in Montreal. The merchandise is offered in two ways, either f. o. b. Montreal, or on a landed cost basis, i. e., a c. i. f. delivered price to the customer's place of business. The latter includes all transportation and incidental costs and United States duties. According to the witness, both prices include the costs of all containers and coverings and other expenses incidental to placing the merchandise in condition packed ready for shipment to the United States. The merchandise was offered to all purchasers except poor credit risks and there were no quantity discounts. Mr. Josephson stated that he made known to his customers verbally that they might purchase at the f. o. b. Montreal price or at c. i. f. duty-paid prices and that the manufacturer's representative in the United States was instructed to advise customers of both methods of buying. However, in practice, Canadian customers bought f. o. b. Montreal and United States customers at the c. i. f. duty-paid price, although the manufacturer would have preferred to deal on a f. o. b. basis. The merchandise was offered to all customers in the United States, wherever located, at the same c. i. f. duty-paid price.

Mr. Josephson testified that his firm had a price list which was in effect during the month of January 1967, a copy of which was received in evidence as exhibit 1. While intended primarily for internal distribution, it was available to the trade and all sales were made in accordance therewith. The witness testified that the figures under the heading "Prices Can." represented the freely offered prices f. o. b. Montreal in Canadian funds. These prices were freely offered to all customers but were primarily utilized by Canadian customers. Under the heading "U.S." are the c. i. f. prices in United States funds that are offered to American customers.

According to the witness tickets attached to samples of the merchandise at the showrooms list these same prices. On one side is a coded figure representing the "Price Can." on the price list, and on the other is the price "U.S."

Referring to the invoices and entries in this case, the witness testified that there was deducted from the invoice price a sum of $7.88 for freight. Based upon conversations with commodity specialist Ralston, the witness said that the $7.88 represented the maximum allowable freight that could be deducted from a c. i. f. invoice before duty was calculated. He believed that it represented the freight from Montreal to either New York City or the New York crossing point. It was not the actual freight paid on the shipment. The next deduction was $5.25 representing the specific duty on the articles by weight. The final deduction represented the ad valorem duty at 27½ percent.

A group of invoices was received in evidence representing sales to American customers. They indicate that the invoice prices embraced all charges to the place of delivery, including customs duties, brokerage and transportation.

There were also offered, but received only for identification, invoices representing sales to Canadian customers. According to the witness, these were all made at f. o. b. Montreal prices.

While the parties are in agreement that export value is the proper basis of valuation for the within merchandise, two values have been proposed in addition to the appraised values.

1. The merchandise was appraised by the appraiser at the unit invoice prices less deductions for freight of $7.88 and less entry fees and duty.

2. The plaintiff claims that the proper dutiable values are the f. o. b. Montreal prices.

3. Although the Government said in its statement under Rule 15 that the export value claimed by it was the appraised value, it now contends that the

proper dutiable values are the "U. S. prices" without any deductions.

■ Although it may appear that the Government's claim is proper in defense of plaintiff's claimed values but is not one on which it could receive an affirmative judgment, it has been held that the defendant is not precluded from receiving judgment higher than the appraised value. Arkell Safety Bag. Co. v. United States, 24 CCPA 26, T.D. 48307; A. W. Fenton Co., Inc. v. United States, 61 Cust.Ct. ——, R.D. 11556 (application for review abandoned, 61 Cust.Ct. ——, ARD 246, 10/28/68).

Export value is defined in section 402 of the Tariff Act of 1930, as amended, as follows:

(b) For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

■ While this section makes no mention of deductions, it is clear that the value contemplated is the *per se* price of the goods in the principal markets of the country of exportation, plus the cost of packing and other expenses incidental to placing the goods in condition for shipment. Charges accruing subsequent to the time of shipment are not ordinarily included in dutiable export value. United States v. International Commercial Co., Inc., and Armour & Co., 28 Cust.Ct. 629, Reap. Dec. 8112.

■ Export taxes, for instance, which do not accrue until the merchandise is exported are not part of export value. Sternfeld v. United States, 12 Ct.Cust. Appls. 172, T.D. 40065; United States v. Tadross & Co. et al., 14 Ct.Cust.Appls. 10, T. D. 41528.

It has long been held that ocean freight is not a part of export value. The John Shillito Company v. United States, 5 Treas.Dec. 555, T.D. 23851; United States v. Samuel Shapiro & Co. et al., 65 Treas.Dec. 1650, Reap.Dec. 3268; John A. Steer & Co. v. United States, 30 Cust.Ct. 504, Reap.Dec. 8196, cited and quoted with approval in United States v. Paul A. Straub & Co., Inc., 41 CCPA 209, C.A.D. 553; United States v. The Heyman Co., Inc., 50 Cust.Ct. 564, A.R.D. 157.

In John A. Steer & Co. v. United States, supra, the merchandise was freely offered for sale to all purchasers in the city of Helsinki at a price in United States dollars, net, packed, c. i. f. Philadelphia. The court noted (p. 507):

* * * Included in said price were, of course, certain charges, such as forwarding and lading fees, consular fee, marine and war risk insurance, and ocean freight, which, because they ordinarily accrue subsequent to the time when the merchandise is in the principal market, in condition, packed ready for shipment to the United States, are not, and, since the act of 1890, have never been, considered as dutiable items. * * *

■ Defendant argues, however, that the principles invoked in the inland freight cases are controlling in determining the export value of the merchandise presently before the court and that, therefore, the dutiable export value is the c. i. f. duty-paid price without deductions. In those cases it was held that where merchandise was offered and sold only at a single f. o. b. price which included inland freight charges to place of delivery or port of exportation, no deduction might be made for such charges in determining dutiable value. United States v. Heffernan Paper Co., 13 Ct. Cust.Appls. 593, T.D. 41454; United

States v. Traders Paper Co. et al., 14 Ct. Cust.Appls. 293, T.D. 41909; United States v. Zellerbach Paper Co. (Hoyt, Shepston & Sciaroni), 28 CCPA 303, C.A.D. 159; United States v. Paul A. Straub & Co., Inc., supra; Albert Mottola, an Individual doing business under the name and style of Atlas Shipping Co. v. United States, 46 CCPA 17, C.A.D. 689.

In the *Straub* case, the court pointed out that the freely offered price was always the f. o. b. Bremem price and stated that to allow the item of inland freight would be tantamount to approving a dutiable value less than the actual price at which such goods could have been purchased in the principal market. It stated (p. 215):

> * * * The unit prices for the merchandise in the instant case included the inland freight charges at the time of purchase in Selb-Stadt, and as the appellant states, "Such inland freight is incorporated in and bound up with the cost to the seller of material and labor, and forms an integral part of the unit value and purchase price of each item. It is inseparable therefrom and is a charge *in* the principal market *at or prior to the time of shipment,* and does *not accrue subsequent to the time of shipment* to the United States." [Emphasis quoted.]

In the *Mottola* case, the court again held that where there was no showing that the merchandise could ever be purchased at a price which did not include the freight, the freight charges were not deductible. It pointed out, however, (p. 19):

> While the language of the Tariff Act of 1930 differs from that of the Act of 1883, we are of the opinion, as was the Customs Court, that the 1930 Act does not contemplate that inland freight charges in the country in which the merchandise originates are ordinarily to be included in the export value. As was clearly indicated in the *Straub* decision, such charges are

not to be included if the merchandise can be purchased in the principal market at a price which does not include the charges. * * *

The inland freight cases were distinguished in United States v. The Heyman Co., Inc., supra, where the court stated (p. 572):

> * * * Inland freight, under a f. o. b. foreign port contract, is an element of expense which accrues while the merchandise is in the foreign country of exportation and, as such, constitutes an appropriate element to be included in the valuation. However, the statutory basis of value before us, namely, export value, admonishes us to reject as an element of value those charges which accrue subsequent to the time the merchandise leaves foreign shores. Such is the nature of ocean freight which, unlike inland freight, accrues subsequent to the time the merchandise is exported from foreign shores and, as such, cannot properly constitute an element of such valuation. United States v. New England Foil Corp., 10 Cust.Ct. 596, 597, Reap.Dec. 5856. See also, United States v. F. C. Gerlach & Co. et al., 7 Cust.Ct. 494, 504, Reap.Dec. 5443.

In United States v. New England Foil Corp., 10 Cust.Ct. 596, Reap.Dec. 5856, the Government contended, as here, that the export value should be the c. i. f. duty-paid price without allowances for freight, insurance, consular fee, and duties. In rejecting that position, the court stated (pp. 597–598):

> * * * The sales here in question were consummated in Switzerland and not in the United States, the manufacturer retaining the authority to sell direct and the freely offered price to all purchasers for export to the United States is $6.50 per ream, less the cash discount, including the duty and nondutiable charges indicated. Such value, with such deductions, is clearly the export value as defined by the statute. See Gerlach v. United States, Reap. Dec. 5084 affirmed in Reap.Dec. 5443.

Under the novel theory advanced by the Government, c. i. f. duty-paid prices are excluded from any definitions of value as outlined by Congress in the administrative provisions of the law. It may hardly be implied that Congress in drafting the tariff laws was so ignorant of the ordinary commercial transactions that c. i. f. duty-paid transactions are so outside its knowledge that such prices were not contemplated when drafting the definitions of value.

In Plywood & Door Manufacturers Corporation v. United States, 44 Cust. Ct. 541, Reap.Dec. 9581, modified and remanded sub nom. United States v. Plywood & Door Manufacturers Corporation, 46 Cust.Ct. 797, A.R.D. 133, the merchandise was offered only at prices in American dollars, c. i. f. American ports. The court said that if one were to follow literally some expressions in United States v. Paul A. Straub & Co., Inc., supra, one might conclude that inasmuch as the c. i. f. price was the only price at which the merchandise was offered, that price, without any deductions would represent the dutiable export value. In rejecting that view, the court noted that our appellate court in the *Straub* case had quoted with approval from John A. Steer & Co. v. United States, supra, in which it was held that the correct export value was the c. i. f. price, less charges for consular fee, forwarding and lading, marine and war risk insurance, and ocean freight.

In the A. W. Fenton Co., Inc. v. United States, case, supra, in answer to defendant's argument that the export value should be the duty-paid price without deductions, the court said:

In close, I find nothing strained in the existing judicial construction that charges which accrue after merchandise is in the principal market packed ready for shipment to the United States are not part of dutiable export value as defined in section 402(b), as amended. Defendant's contention that the statute does not provide for any deductions, in some respects, begs the

question of what the statute does say. If the test of time has any validity, the judicial construction has achieved a substantial fairness which Congress and those responsible for the administration of section 402 have undoubtedly recognized. The construction has survived reenactment of the export value statute without substantial change, and it is a settled principle that " * * * interpretations long continued without substantial change, applying to unamended or substantially reenacted statutes are deemed to have received congressional approval * * * ". United States v. Correll et ux., 389 U.S. 299, 305, 88 S.Ct. 445, 19 L.Ed.2d 537.

It must be kept in mind that the purpose of the statute is to ascertain the value of merchandise and not the value of merchandise plus costs of transportation, insurance, and duty. If the Government's position were adopted, duty would be included in the dutiable value, thus resulting in double taxation. Such a construction is never presumed. The intention to impose double taxation must be shown by clear and unequivocal language. 51 Am.Jur.,Taxation, sec. 266; Maass v. Higgins, 312 U.S. 443, 449, 61 S.Ct. 631, 85 L.Ed. 940, 132 A.L.R. 1035; Tennessee v. Whitworth, 117 U.S. 129, 137, 6 S.Ct. 645, 29 L.Ed. 830.

It is clear that the appraiser did not consider that the correct dutiable value would result if the c. i. f. duty-paid, price, without deductions, were used, since he did make deductions. However, the amount deducted for freight was an arbitrary amount, for which there is no legal justification. Luckytex, Ltd. v. United States, 60 Cust. Ct. 826, R.D. 11511. This method may have been used because deductions for actual freight would have resulted in different prices for the same merchandise depending upon the destination of the shipment. In such a situation, it has been held that no foreign or export value existed. United States v. The

Heyman Co., Inc., supra. In that case, the court said (p. 572):

The price quoted by Santa Ines for merchandise similar to the involved merchandise includes charges for the merchandise landed at New York and not charges for the merchandise in condition, packed ready for shipment to the United States. In fact, it has not been shown that Santa Ines' pads could have been purchased in the home market for exportation to the United States at a price which did not include ocean freight. Consequently, there is no evidence of record of a single home market price as such for Santa Ines' merchandise on the basis of which a statutory export price can be determined.

May export value be found, as claimed by plaintiff, at the f. o. b. Montreal prices? Under section 402(b), supra, export value is the price at which the merchandise is freely sold, or in the absence of sales, freely offered for sale. In the instant case, the merchandise was *sold* to United States customers only at the c. i. f. duty-paid price but was *offered* at the f. o. b. price. Plaintiff claims that since the c. i. f. duty-paid price cannot be used to form the basis of a dutiable export value, there was an absence of sales within the meaning of the statute, citing Aceto Chemical Co., Inc. v. United States, 51 CCPA 121, C.A.D. 846. In that case the sales were at a variety of prices so that it was impossible to determine an American selling price without arbitrarily picking one of them. It was, therefore, held that there was not such a selling price as would establish the price at which the article was freely old. Appraisement was, therefore, made at the price at which the merchandise was freely offered for sale. Appellant contended that since there were sales, such offers could not be considered. The court held to the contrary, stating (pp. 126–127):

While appellant strenuously urges its point, arguing that we cannot look to the offering price because there were actual sales at other prices, no reasons are given to support this interpretation other than the fact that the words are there. To adopt this meaning, however, could lead to results clearly not contemplated by Congress. The sales which we have before us, being a variety of prices, make it impossible to determine, from them, an American selling price unless we arbitrarily pick the price at which one of such sales were made. There is not, therefore, *such* a selling price as will serve the purposes of the statute. There is thus an "absence of sales" to establish *"the* price * * * at which such article is *freely* sold * *." (Our emphasis.) We think this is such an absence as Congress intended to bring into effect the expressly stated alternative "or * * * offered for sale * * *." We therefore agree with the conclusion of the Appellate Term on this issue. In doing so, we note that the lower court reviewed at length the legislative history of the language under consideration and found, for reasons with which we agree, that it supports its construction of the statute. We do not consider it necessary to review the matter again.

▮ In the instant case, the prices at which the merchandise was sold to American purchasers cannot be used because they include items not properly part of dutiable export value. There being an absence of sales, offers may be considered. There is evidence that the merchandise was both offered and sold to Canadian customers at the f. o. b. Montreal prices. There is also evidence that it was so offered for exportation to the United States. There is nothing in the record to the contrary.

▮ It is to be noted that in the inland freight cases cited above, stress was laid on the fact that the merchandise was not offered in any way other than on the f. o. b. port or inland destination basis; therefore, the inland freight was considered a part of dutiable value. In the instant case, the merchandise was

offered f. o. b. Montreal, that is, at a price which did not include charges for freight to destination in the United States, duty, and other incidental expenses. That price more nearly corresponds to the export value contemplated by the statute than the c. i. f. duty-paid price, at which the merchandise was actually sold.

For the reasons stated, I find that the f. o. b. Montreal prices represent the export value, as defined in section 402 (b), supra.

On the record presented, I find as facts:

1. That the merchandise involved in these appeals for reappraisement consists of woven rayon dresses exported by Josef Mfg., Ltd., Montreal, Canada, on or about January 18 and January 25, 1967.

2. That said merchandise is not included in the Final List published by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

3. That said merchandise was appraised on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

4. That export value was found by the district director to be the prices at which the dresses were actually sold to the buyers in the United States, namely, Martha's, Palm Beach, Florida, and Samuel Murrow & Company, Chicago, Illinois, less an arbitrary deduction for freight in each case, namely $7.88, which was not the actual freight charge, and less deductions for entry fees and customs duties.

5. That an appraisal based upon the c. i. f. duty-paid delivered prices in the United States would result in different net values for the same merchandise, if the actual freight were deducted.

6. That at the time of exportation to the United States, such merchandise was freely offered for sale in Montreal, the principal market of Canada, to all purchasers in the United States who cared to buy, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States, at the following prices, the purchaser having the option of buying at the c. i. f. duty-paid delivered prices or the f. o. b. Montreal prices:

| Style No. | U.S. $ c.i.f. delivered | Can. $ f.o.b. Montreal |
|---|---|---|
| 1286 | 35.75 | 25.75 |
| 1200 | 35.75 | 25.75 |
| 1229 | 35.75 | 25.75 |
| 1284 | 31.75 | 22.75 |
| 1279 | 31.75 | 22.75 |
| 476 | 31.75 | 22.75 |

7. That at the time of exportation all actual sales for exportation to the United States were made at the c. i. f. duty-paid delivered prices set forth in finding of fact No. 6.

I conclude as matters of law:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the instant merchandise.

2. That the c. i. f. duty-paid delivered price does not represent export value, as that value is defined in said section 402(b), as amended.

3. That export value may not be determined by deducting from the c. i. f. duty-paid price, an arbitrary amount for freight, not representing the actual freight charges.

4. That since all actual sales of the within merchandise were made at the same c. i. f. duty-paid delivered prices to all points in the United States, a finding of value based upon the actual sales and the actual freight would result in different net values for the same merchandise, depending upon the destination of the shipment. Such values do not constitute export value within the meaning of the statute.

5. That in the absence of sales on the basis of which an export value may be found, offers may be considered.

6. That the prices at which the merchandise was freely offered for sale on an f. o. b. Montreal basis represent the export value, as defined by the statute.

7. That such values are those set forth in finding of fact No. 6, supra.

Judgment will be entered accordingly.