**ATLAS COPCO, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 82–8–01137.**

United States Court of
International Trade.

Dec. 12, 1986.

Barnes, Richardson & Colburn (David O. Elliot and Jack D. Mlawski, New York City, of counsel), for plaintiff.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Attorney-in-Charge, Intern. Trade Field Office, (Nancy E. Reich, New York City, attorney), for defendant.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge:

In this action the plaintiff-importer claims the right to duty-free importation for tunneling and digging machinery which was being returned to the importer after being leased by a Canadian construction company. When the machinery was originally imported from Switzerland, the importer paid duty on it. The government has again assessed duty on it of 5% ad valorem under the provision for excavating and boring machinery in Item 664.05 of the Tariff Schedules of the United States which reads as follows:

Item 664.05, TSUS:

Mechanical shovels, coal cutters, excavators, scrapers, bulldozers, and other excavating leveling, boring, and extracting machinery, all the foregoing, whether stationary or mobile, for earth, minerals, or ores; pile drivers; snow plows, not self-propelled; all the foregoing and parts thereof ... 5% ad valorem.

The importer claims the benefit of Item 801.00 of the Tariff Schedules of the United States which, under certain conditions, allows articles which have been previously imported and on which duty has been paid, to be reimported without paying duty again. Item 801 reads as follows:

Item 801, TSUS:

Articles, previously imported, with respect to which the duty was paid upon such previous importation, if (1) reimported, without having been advanced in value or improved in condition by any process of manufacture or other means while abroad, after having been exported under lease to a foreign manufacturer, and (2) reimported by or for the account of the person who imported it into and exported it from the United States.

It has been stipulated between the parties that the only point of Item 801.00 which is in dispute is whether the party to whom this machinery was leased was a "foreign manufacturer."

The government argues that a construction company is not a manufacturer within the meaning of Item 801. It relies on strict interpretation of the term in cases under the tariff laws in which the process of manufacture has been limited to work which results in a distinct product or article of commerce. It argues that the construction work in which the foreign party was engaged was not manufacturing in that sense.

In resolving this dispute it is instructive to begin with the cases cited by the government for the propositions that this action resembles those in which drawback is involved and that strict construction of the term manufacturer is called for.

The leading case relied on by the government is *Anheuser-Busch Brewing Association v. United States*, 207 U.S. 556, 28 S.Ct. 204, 52 L.Ed. 336 (1908), an opinion from an era when the Supreme Court was not loath to involve itself regularly in the interpretation of the tariff laws. In that case the Supreme Court held that imported corks used to seal bottles of exported beer were not entitled to drawback of customs duties. This meant that the plaintiff beer manufacturer could not benefit from the provision that duties paid on materials used in the making of articles manufactured in the United States and then exported should be refunded. Two reasons supported this result. First, the exportation was held to be beer, not corks or bottles, and the court evidently viewed the drawback provision as benefiting materials which were actually incorporated into the exported article, as would be the case with hops in the brewing of beer. Second, in the point that is germane here, the corks, even if they were to be considered as potential manufactured articles in themselves, were held not to be sufficiently changed, treated or manipulated, so as to make them manufactured in the United States. The court stressed the need for a transformation and the emergence of a new and different article if the duty on the original imported component or material was to be refunded.

The government has seized on this reasoning to argue that, with respect to Item 801, the "manufacturer" to whom articles are leased must be someone involved in the making of products and not merely in the process of digging tunnels and constructing buildings. This is obviously a narrow view of the concept of manufacturing and for the proposition that strictness is required here, the government cites the venerable case of *Swan & Finch Co. v. United States*, 190 U.S. 143, 23 S.Ct. 702, 47 L.Ed. 984 (1903).

In that action the plaintiff had imported rape seed oil, used it to make lubricating oil, and then sent the final product out of the country on vessels, some of it destined for foreign countries and some of it to be used for lubrication on the voyage. The Supreme Court concluded that the portion used for lubrication on the voyage was not being "exported" within the meaning of the drawback statute. In reaching the conclusion to interpret "exportation" as more than simply sending the articles out of the territory of the United States, the court relied on the maxim that a governmental

grant of a privilege or benefit is to be construed in favor of the government and against the party claiming the grant.

In this case it is important to note that we are not dealing with a provision for complete exemption from the payment of duty. Item 801 relieves a party from paying duty more than once on the same article.

■ Drawback, which works a complete exemption from duty, is a different sort of benefit and may properly be interpreted strictly. This accounts for the views expressed in the *Anheuser-Bush* and *Swan & Finch* opinions and distinguishes those cases. They have been decided in accordance with the general principle that tax exemption is to be strictly construed against the tax payer and in favor of the government. *Pacific Co. v. Johnson,* 285 U.S. 480, 491, 52 S.Ct. 424, 426, 76 L.Ed. 893 (1931). Here we have an entirely different situation.

■ The provision relieving reimported merchandise from paying duty a second time, when it is still owned by the same importer, works to eliminate an assessment of duty which has the appearance of double taxation. Although double taxation is not *ipso facto,* a defective or unconstitutional exercise of power, it is not a preferred result. On this point the Supreme Court has stated that all presumptions are against the imposition of double taxation unless the legislature's intention is unmistakable. *Tennessee v. Whitworth,* 117 U.S. 129, 137, 65 S.Ct. 645, 647, 29 L.Ed. 830 (1885). Similarly, it has been stated that "double taxation in any form is an interpretive conclusion that is to be avoided unless manifestly required." *Verkouteren v. District of Columbia,* 433 F.2d 461, 469 (D.C. Cir.1970). In a case in which the government's position would have required including duty in the value of imported merchandise and thus resulted in the assessment of duty upon duty this court held that the intention to impose double taxation must be shown by clear and unequivocal language. *Josef Manufacturing Ltd. v. United States,* 62 Cust. Ct. 763, 769 R.D. 11616,

294 F.Supp. 956 (1969), *aff'd,* 64 Cust.Ct. 865, A.R.D. 274, 314 F.Supp. 51 (1970), *aff'd,* 59 CCPA 146, 460 F.2d 1079 (1972).

■ The court therefore is not persuaded that Item 801 grants the sort of exemption from duties which must be narrowly construed. Rather because it offers relief to importers from the repeated assessments of duty on the same article—which is akin to double taxation and hence disfavored—the provision should be interpreted fairly and broadly to extend to all cases in which the foreign lessee may reasonably be considered a "manufacturer." It takes little generosity of interpretation to conclude that, in a general sense, manufacturing includes the activities of construction and all the work associated therewith.

■ Precedent for such an interpretation of "manufacturing" exists in the areas of patent and bankruptcy law. The courts long ago found that patent protection for any new and useful "manufacture" covered buildings and parts thereof. *Riter-Conley Manufacturing Co. v. Aiken,* 203 F. 699 (3d Cir.), *cert. denied,* 229 U.S. 617, 335 S.Ct. 776, 57 L.Ed. 1353 (1913). The Supreme Court, in the same era as the *Swan-Finch* and *Anheuser-Busch* opinions found that the "manufacturing" covered by the Bankruptcy Act of 1898 included construction. *J.H. Friday, et al. v. Hall & Kaul Co.,* 216 U.S. 449, 30 S.Ct. 261, 54 L.Ed. 562 (1910). *See also, In re Church Construction Co.,* 157 Fed. 298 (D.C.N.Y.1909).

The court is of the opinion that the spirit of beneficial inclusiveness in which patent and bankruptcy law use the words "manufacture" and "manufacturing" to describe their coverage is more appropriate here than the narrow manner in which drawback is viewed.

Finally, if Item 801 is viewed as an attempt to benefit United States businesses which lease articles to foreign manufacturers, it makes no sense to make strained distinctions between types of foreign manufacture. In fact, the encouragement of leasing to manufacturers who do not pro-

duce articles which are ultimately imported into the United States would seem to be an even greater boon to the economy of this country than leasing to manufacturers whose products may ultimately enter this country.

In short, the government's position is unacceptable as a matter of plain interpretation and is inconsistent with any reasonable assumption concerning the purpose of Item 801.

For these reasons the court holds that a foreign construction company is a manufacturer within the meaning of Item 801 and the machinery in dispute here is therefore entitled to entry free of duty.