(Reap. Dec. 9072)

AMERICAN COMMERCIAL, INC. *v.* UNITED STATES

Entry No. 63796, etc.

(Decided on rehearing [not published] February 11, 1958)

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

DONLON, Judge:   The gist of plaintiff's grievance in the six appeals to reappraisement, which are here consolidated for trial, is that the appraiser should have deducted from the invoice unit prices of this merchandise certain charges which were included in those prices.

There is no dispute as to the underlying facts basic to a decision that this merchandise is to be appraised at export value.   If such or similar buttons were freely offered in Japan in the usual wholesale quantities for domestic consumption, at the time of these exportations, it is conceded that the price for such domestic offerings was no higher than the lower of the export values contended for in this litigation as appraisement value of the merchandise.

Japanese buttons, such as this merchandise, were freely offered at the time of these exportations, in the usual wholesale quantities and in the ordinary course of trade, for export, packed ready for shipment to the United States.   The principal market in which they were then so offered was Kobe.   They were offered at unit prices, f. o. b. Kobe.

The unit prices at which such offerings were made are the invoice prices.   It is so stipulated.   There were then no offerings of such or similar buttons at prices *ex* factory.   While not clearly stipulated, it appears from the facts of record that the factory from which such buttons were shipped is at Naka-Kawachi.   At least, that was the place from which the buttons were shipped to Kobe.

The stipulated invoice unit prices were the only prices at which such or similar merchandise was then offered.

While plaintiff's six petitions, here litigated, raise an issue as to inland freight from Naka-Kawachi to Kobe, claiming that it, too, should be deducted from invoice unit prices, the inland freight issue is not argued by plaintiff.   Plaintiff seems to concede that, on the facts here of record, there may not be deduction of inland freight.

What plaintiff does contend, and earnestly argues for, is that there should be deducted from the merchandise unit prices certain costs, included (like inland freight) in those unit prices, but which represent charges after the merchandise reached Kobe.   These charges include warehouse, insurance, hauling from warehouse to dockside, and lighterage to the vessel in Kobe harbor on which the merchandise was exported to the United States.   In the export jargon of the Orient, these costs are for getting the merchandise from "go-down" to vessel.

There is no suggestion that plaintiff paid these go-down costs in addition to the invoice unit prices, or as a separate charge apart from purchase of the merchandise from the seller. There are, for that matter, no proofs before the court as to what these disputed costs actually were. The invoices recite certain costs, but their correctness is not stipulated or otherwise affirmed. Whatever these costs were, it is stipulated that they were included in the invoice unit prices at which, and only at which, such buttons were freely offered, bought, and paid for.

It is not the fact, as much of plaintiff's argument might seem to assume, that the appraiser has added these go-down costs to invoice unit prices. What actually is involved here, is whether the appraiser is required by law to deduct the go-down costs from the invoice unit prices of the buttons.

In my opinion, such deduction is neither required nor permitted, under the language of the applicable statutory provision. The provision which the court is here called upon to construe is section 402 (d), Tariff Act of 1930. It is in section 402 (d) that Congress defined export value for purposes of appraisement.

Briefly stated, export value is the market value or price of the merchandise (under statutory circumstances, here conceded) "plus, when not included in such price," certain enumerated costs. There is no provision in section 402 (d) for deduction of anything from price. That is to say, when *not* included in price, certain costs are to be added. When costs are included in price, there is no provision for subtracting them, or any of them, in order to arrive at export value computed under the statutory formula.

Price is price, except where market conditions are such as to depress price to a level where the seller is absorbing costs specified in the statute, and where that is the price situation, such costs, to the extent that they are not included in price, are arbitrarily to be added. This provision helps to protect the revenues of the United States and the competitive markets of domestic manufacturers. It is a reasonable provision. But whether or not it is reasonable, it is the provision which Congress enacted.

Congress has not enacted in section 402 (d) any provision with respect to export value, such as that for which plaintiff argues. It is not there.

While the issue in *United States* v. *Paul A. Straub & Co., Inc.*, 41 C. C. P. A. (Customs) 209, C. A. D. 553, related to a claim for deduction of inland freight, cost of which was included in invoice unit prices f. o. b. seaport (not the principal market), the reasoning on which the decision of our appeals court turned is persuasive in the situation now before us. There, too, the statute construed was section 402 (d), the same provision for export value as here.

After consideration of certain cited authorities, in which appraisement basis was something other than export value, or appraisement at export value was under an earlier and different statute, or where the facts did not (as in both the *Straub* and instant cases) show invoice unit prices embracing the disputed costs, the appeals court said:

In the case before us it is a fact that the freely offered price to all purchasers for the merchandise was on an f. o. b. Bremen basis. There is no showing that the goods could be purchased at the invoice price less freight. The unit prices for the merchandise in the instant case included the inland freight charges at the time of purchase in Selb-Stadt, and as the appellant states, "Such inland freight is incorporated in and bound up with the cost to the seller of material and labor, and forms an integral part of the unit value and purchase price of each item. It is inseparable therefrom and is a charge *in* the principal market *at or prior to the time of shipment,* and does *not accrue subsequent to the time of shipment* to the United States." [Italics quoted.]

It is clear, on the record now before the court, that go-down charges were incorporated in and bound up with the cost of this merchandise to the seller and form an integral part of the unit value and purchase price of this merchandise. Go-down charges are inseparable from price. Whether or not material to my decision in this suit, it is likewise a fact that none of the litigated charges accrued subsequent to shipment to the United States.

I am mindful that two cases concerned with claims for deducting go-down charges from invoice unit prices, in appraisements at export value, have been decided by a colleague sitting as trial judge; that one such decision has been reversed by a division of this court in appellate term and is now pending on appeal to the Court of Customs and Patent Appeals; and that the other such decision is now pending on application for review before a division of this court sitting in appellate term. All this presents no firm basis of precedent on which I can presently rely in arriving at my decision.

Plaintiff previously had abandoned these six appeals to reappraisement. On timely motion to set aside the abandonments, the abandonments were set aside, a tendered stipulation of facts was accepted of record, the invoices were admitted into evidence, the appeals were consolidated, and the consolidated appeals submitted for judicial decision. Leave to file briefs was granted, and the briefs are before me.

In view of my decision, failure of proofs as to what the contested go-down charges actually were is not prejudicial to plaintiff. If my decision on the law were otherwise, plaintiff would, of course, have failed in its burden of proof.

I make the following findings of facts:

1. That the entry merchandise buttons was exported from Japan during the period from July 1951 to December 1952.

2. That the invoice unit prices include a charge for inland freight from Naka-Kawachi to Kobe.

3. That the invoice unit prices include also charges for storage, insurance premiums, hauling, and lighterage, incurred by seller after the merchandise was placed in warehouse in Kobe.

4. That there is no competent proof of record as to the amount of the charges for inland freight, storage, insurance premiums, hauling, and lighterage, so included in invoice unit prices.

5. That at the times of exportation such or similar merchandise was not freely offered for sale *ex* factory in Naka-Kawachi, but was freely offered only at the invoice unit prices f. o. b.

6. That at the times of exportation the market value or price at which merchandise such as or similar to the entry merchandise, if freely offered in Japan for sale to all purchasers for home consumption, was no higher than the market value or price at which such or similar merchandise was freely offered for export.

7. That at the times of exportation merchandise such as or similar to the entry merchandise was freely offered for sale to all purchasers in the principal market in Japan, in the usual wholesale quantities, and in the ordinary course of trade, for exportation to the United States, only at invoice unit prices f. o. b. Kobe, the principal market. which invoice unit prices included the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed, ready for shipment to the United States.

I conclude as a matter of law:

1. That export value, as defined in section 402 (d) of the Tariff Act of 1930, is the proper basis of value for the entry merchandise.

2. That the items claimed as charges for inland freight from Naka-Kawachi to Kobe, and for storage, insurance premiums, hauling, and lighterage, are not deductible from invoice unit prices in determining export value of the entry merchandise.

3. That the export value of the entry merchandise is the appraised value.

Judgment will be rendered accordingly.