**ONTARIO STONE CORPORATION**

v.

**UNITED STATES.**

**R.D. 11727; Reappraisement R66/3848.**

United States Customs Court.

Nov. 23, 1970.

Barnes, Richardson & Colburn, New York City (James S. O'Kelly, New York City, of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Harold L. Grossman, New York City, trial attorney), for defendant.

ROSENSTEIN, Judge:

The merchandise involved in this appeal for reappraisement consists of crushed dolomite stone exported from Canada on or about September 9, 1962. It was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, at the invoiced unit price of $2.10 per ton, net, less the invoiced charges for wharfage, vessel freight,

loading of boat, and the 6½ percent duty.

Plaintiff concedes that the statutory basis for the appraisement is correct, but contends for a lower value under said basis by claiming that certain charges, disallowed by the appraising official, described on the invoice as haulage to dock, lease of dock, and stockpiling at dock, are not properly part of the dutiable value.

Section 402(b), as amended, *supra*, reads as follows:

(b) *Export Value.*—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

Section 402(f) of said Act, as amended *supra*, provides:

(f) *Definitions.*—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale * * *.

The sole witness herein, Carl Barricelli, president and founder of Ontario Stone Corporation, whose duties involved the buying and selling of the company's crushed dolomite stone, testified that he was familiar with the subject transaction here involved, having personally ordered and purchased the stone from the seller R. E. Law Crushed Stone Ltd., for shipment to the Penney Dock at Ashtabula, Ohio. Mr. Barricelli indicated on direct examination that, from the inception of his business with the seller in 1959 and continuing through 1962, all transactions or purchases were on an "f. o. b. delivered" basis to a dock at Port Colborne, Ontario, and that "this case was just like any of the other cases". He stated that the invoice price of $2.10 "includes the vessel freight, the material, the wharfage, haulage to dock, loading of the boat at the dock, the stockpiling at the dock, and the lease of the dock, plus the duty." He could have bought the stone at the quarry and have done his own trucking and shipping as he did in 1959, although he had no facilities in Canada for loading the trucks. The parties "agreed on a price for stone" and then "came to an agreed price for such things as stockpiling, and trucking, and shipping merchandise to the United States." The witness testified that the seller invoiced him separately for the stone and separately for the trucking, stacking, vessel freight, and other charges.

Upon cross-examination, Barricelli testified that, in 1959, Ontario Stone Corporation was not in existence (it was founded in 1960);[1] that immediately prior to, or on or about September 9, 1962, the date of exportation of the involved merchandise, he had never made a purchase of stone from the R. E. Law quarry on an ex-factory basis; and that the transaction at bar was a "c. i. f. duty paid transaction." The witness did not have with him in the courtroom the separate invoices for the individual charges which he had referred to in his direct testimony. On re-direct examination, he reiterated that R. E. Law offered him the stone "ex-quarry".

■ In reappraisement proceedings, the party attacking the appraiser's find-

---

1. The witness conducted a business under the name of "Tri-Mix Stone" in 1959.

ing of value, which is presumptively correct (28 U.S.C. § 2633), has a two-fold burden of proving that the action of the appraiser was erroneous, and that the claimed value is correct. Kobe Import Co. v. United States, 42 CCPA 194, C.A.D. 593 (1955).

■ The appraisement herein was made by working backward from a delivered price in Cleveland to a price at the dock in Port Colborne, Ontario, with no dispute as to which charges were deducted and which were not. Where the appraiser's finding of value is expressed, as here, in terms of the invoice unit prices, plus the charges, including those in question, the appraisement is deemed to be separable. United States v. Gehrig, Hoban & Co., Inc., 54 CCPA 129, C.A.D. 924 (1967); Alvin Naiman Corporation v. United States, 54 Cust.Ct. 705, Reap.Dec. 11008 (1965). Accordingly, plaintiff may challenge one or more elements of the appraisement, in this case, the aforementioned charges, while relying upon the presumption of correctness of the appraiser's return as to all other elements, providing the challenged items do not disturb the effect of the remainder of the appraisement. United States v. Bud Berman Sportswear, Inc., 55 CCPA 28, C.A.D. 929 (1967); United States v. Chadwick-Miller Importers, Inc. et al., 54 CCPA 93, C.A.D. 914 (1967).

■ However, the separability rule does not, as plaintiff contends, relieve it of the burden of establishing that the imported stone was freely sold or, in the absence of sales, offered for sale to all purchasers at prices which do not include the disputed charges, that is, on an ex-quarry basis. Our court of appeals recently reiterated this point with some emphasis in United States v. Pan American Import Corp. et al., 57 CCPA, C.A.D. 993 (1970), noting that, in *Chadwick-Miller*, it had—

\* \* \* held, in essence, that, where a separable appraisement is involved, once an importer has shown that the merchandise was freely sold or offered for sale to *all* purchasers, in the principal markets, in the usual wholesale quantities, on an *ex-factory* basis, then the separability rule will give rise to a presumption that the ex-factory *price* which the appraiser found was *the* price at which the merchandise was freely sold or offered to all. [Emphasis copied.]

■ As there is no evidence to show that other purchasers could have bought the stone on an ex-quarry basis, plaintiff has failed at the outset to meet its burden of proof.

■ Furthermore, the record establishes actual sales at ex-dock prices. There is no evidence of actual sales made at a price not including the disputed charges. The witness' testimony to the effect that he had an option to purchase either ex-quarry or ex-dock is not sufficient in law to establish an ex-quarry price in face of the facts of record of actual sales at ex-dock prices and the lack of evidence of actual sales at ex-quarry prices. Louis Goldey Co., Inc. v. United States, 55 Cust.Ct. 759, A.R.D. 196 (1965).

I also find that the testimonial evidence herein, consisting of conclusory statements and declarations unsupported by evidentiary facts, fails to establish that the seller offered to sell ex-quarry to the importer. See Keer, Maurer Company v. United States, 46 CCPA 110, C.A.D. 710 (1959); Brooks Paper Company v. United States, 40 CCPA 38, C.A.D. 495 (1952); Morris Friedman v. United States, 52 Cust.Ct. 660, A.R.D 178 (1964).

Indeed, without elaborating upon the matter in view of my findings, it is also noted that, whatever weight might have been assigned to the witness' testimony is offset by the declarations in the Special Customs Invoice herein, dated September 9, 1962, and signed by the seller, which directly controvert plaintiff's claims.

On the record presented, the appraised value must be sustained.

I find as facts:

1. That the merchandise involved herein consists of crushed dolomite stone exported by the seller, R. E. Law Crushed Stone Ltd., from Canada on or about September 9, 1962, and entered at the port of Ashtabula, Ohio.

2. That the merchandise does not appear on the Final List published by the Secretary of the Treasury, 93 Treats. Dec. 14, T.D. 54521.

3. That the merchandise was appraised at $2.10 (United States currency) per ton, net, less the following charges which were included in the delivered price: wharfage, $0.05 per ton; vessel freight, $0.65 per ton; loading of vessel, $0.20 per ton; and less United States duty.

4. That the appraiser did not deduct the following charges which were also included in the delivered price: haulage to dock, $0.20 per ton; lease of dock, $0.05 per ton; stockpiling at dock, $0.05 per ton.

5. That both parties herein agreed that the proper basis of appraisement is export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

6. That at the time of exportation of the subject merchandise, there were actual sales of such merchandise at ex-dock prices.

I conclude as matters of law:

1. That plaintiff has failed to overcome the presumption of correctness attaching to the finding of value by the appraiser, or to establish any other value for the involved merchandise.

2. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, T.D. 54165, is the proper basis for the determination of the value of the subject merchandise.

3. That such value is the appraised value. Judgment will be entered accordingly.