59 CCPA

**The UNITED STATES, Appellant,**

**v.**

**JOSEF MFG., LTD., Appellee.**

**Customs Appeal No. 5424.**

United States Court of Customs and Patent Appeals.

June 15, 1972.

L. Patrick Gray, III, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Glenn E. Harris, New York City, for the United States.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellee. Joseph Schwartz, New York City, of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN and LANE, Judges.

RICH, Judge.

This appeal is from the judgment of the United States Customs Court, Third Division, Appellate Term, 64 Cust.Ct. 865, A.R.D. 274, 314 F.Supp. 51 (1970), affirming the judgment of a single judge sitting in reappraisement, 62 Cust.Ct. 763, 294 F.Supp. 956, R.D. 11616 (1969). The parties agree that export value, as defined in section 402(b), Tariff Act of 1930, as amended (70 Stat. 943, T.D. 54165), 19 USC 1401a(b),[1] is the proper basis for valuation, and the major controversy is over the appraiser's use of c. i. f. prices, uniform to all United States customers, in arriving at dutiable value. The Customs Court held that such prices could not be used in determining dutiable value (1)

because they included the cost of shipping the goods from the principal market abroad to the United States, as well as the cost of the goods per se, and (2) because the portion of the c. i. f. price ascribable to the cost of shipping the goods varied depending upon their destination in the United States, meaning that there was no fixed c. i. f. price for the goods themselves. We affirm.

### The Facts

The merchandise consists of rayon dresses exported from Canada and sold at uniform c. i. f. prices throughout the United States. The exporter also sold such dresses to Canadian customers f. o. b. Montreal, and the exporter's general manager testified that he had instructed his salesmen to offer the f. o. b. prices to the exporter's American customers, though none had ever purchased on that basis. The exporter's general manager also testified that Montreal was one of the principal Canadian markets for the sale of dresses, and that point is uncontroverted.

Two shipments are involved. Each shipment consisted of a single carton and both were entered at Champlain, New York. To arrive at export value, the appraiser deducted $7.88 freight from the c. i. f. prices for each shipment, although one weighed 6 lbs. 3 oz. and was destined for Palm Beach, Florida, and one weighed 26 lbs. and was destined for Chicago, Illinois. The exporter's general manager testified that, based on his conversation with the commodity specialist in charge of this line of merchandise, he believed that that amount represented "the freight from Montreal to either New York City, or

1. 19 U.S.C. § 1401a(b) reads as follows:

(b) *Export Value*

For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

the New York crossing point."[2] Nevertheless, in response to the question, "It [i. e., the $7.88] is not the actual freight paid on this shipment [i. e., the shipment to Chicago], is that correct?", he replied, "No, it is not." However, it is not clear from the record whether the question and the witness's response referred to the actual freight from Montreal to the border or to the actual freight from Montreal to Chicago.

### Opinion of the Single Judge

The single judge rejected both the appraised value and the Government's alternative contention that the export values of the merchandise were the uniform c. i. f. prices, without any deduction for freight. In doing so, the single judge relied on two separate rationales, one focusing on where the freight charges arose and one focusing on the effect the inclusion of the variable freight charges in the uniform selling price had on the cost of the goods per se.

The single judge stated his first rationale as follows, relying on United States v. International Commercial Co., 28 Cust.Ct. 629, R.D. 8112 (1st Div. 1952):

> While * * * [19 U.S.C. 1401a (b)] makes no mention of deductions, it is clear that the value contemplated is the *per se* price of the goods in the principal markets of the country of exportation, plus the cost of packing and other expenses incidental to placing the goods in condition for shipment. Charges accruing subsequent to the time of shipment are not ordinarily included in dutiable export value.

He recognized the so-called "inland freight cases," relied on by the Government, but appeared to distinguish them on the ground that they involved freight

charges for moving goods from their place of origin to a principal market for such goods in the country of exportation. Here, of course, the disputed freight was *from* a principal Canadian dress market.

The second rationale put forward by the single judge for holding that appraisement could not be based on uniform c. i. f. prices which included freight charges which were variable, depending upon the location of the customer, was that such prices negated the existence of "a single home market price as such for * * * [the imported merchandise] on the basis of which a statutory export price can be determined." This rationale he based on United States v. Heyman Co., 50 Cust.Ct. 564, A.R.D. 157 (3rd Div.1963), from the principal opinion in which the above quotation was taken.

Having thus disposed of both the original appraisement and the Government's alternative basis, the single judge then turned to the basis for which the plaintiff, appellee here, contended. This was the exporter's f. o. b. Montreal prices, which the single judge conceded had never been the basis of *sales* to American customers. However, he found as a fact that these prices had been *offered* to American customers, and, in reliance on our opinion in Aceto Chemical Co. v. United States, 51 CCPA 121, C.A.D. 846 (1964), he held that the f. o. b. Montreal prices *offered* to American customers should have been the basis of appraisement in the absence of actual sales corresponding to the statutory requirements.

### Opinion of the Appellate Term

For the most part, the opinion of the Appellate Term tracks that of the single judge. Additionally, the Appellate Term noted appellant's argument, which it renews here, that there was no evidence

2. This testimony was admitted on the ground that the government official with whom the witness was alleged to have conversed was present in the courtroom at the time that the witness testified.

The Government did not thereafter call its employee to the stand, and the Customs Court apparently proceeded on the basis that appellee's testimony, being uncontroverted, would be taken as admitted.

that the f. o. b. Montreal prices were actually offered to U. S. customers, but it held that the evidence showed that it was more probable than not that they were.

## OPINION

 We agree with the position taken by the Customs Court. Appellant, citing 1 Anderson, Uniform Commercial Code § 2–320 (2d ed. 1970), argues that, "In a c. i. f. sale, the 'price' of the goods is the total amount paid by the purchaser for the goods," including in one lump sum the cost of the goods and the insurance and freight to the named destination. That is, of course, the definition of a c. i. f. sale, but merely reciting the definition begs the question of whether the c. i. f. price, including the cost of insurance and freight, is "the price * * * of *the merchandise* undergoing appraisement" (emphasis ours) in the sense of 19 U.S.C. 1401a(b) where the freight and insurance costs are for transportation from a principal market of the country of exportation to a destination in the United States. We agree with the Customs Court that it is not. John A. Steer & Co. v. United States, 30 Cust.Ct. 504, 507, R.D. 8196 (1953). Transportation charges from the principal market in the country of exportation should be treated in the same fashion whether transportation is by ship, air, or, as here, by land.

 We also agree that the appraiser could not make the exporter's uniform c. i. f. prices usable as the basis for statutory appraisement merely by deducting therefrom the freight from Montreal to the New York border. Even if the appellee did not rebut the presumption of administrative correctness by its witness's somewhat ambiguous testimony that the appraiser's deductions were "not the actual freight paid on this shipment" and assuming that the actual freight charges for transporting two cartons, one weighing 6 lbs. 3 oz. and one weighing 26 lbs., from Montreal to Champlain, N. Y., were both $7.88, the c. i. f. prices to the

two customers involved here still included the costs of shipping the goods from Champlain to Chicago, Ill., and Miami Beach, Fla., respectively. Necessarily, that means that the prices of the goods per se were not the same to the two customers, or to various other customers in various other parts of the United States. Accordingly, there was no uniform price for the imported *goods*, as distinguished from a uniform price for the package consisting of the goods, the freight, and the insurance, and no individual price, or average price, will substitute for such a uniform price under the statutory scheme. We think that the *Aceto Chemical* case, cited supra, is squarely in point, though it involved non-uniformity induced by other factors.

 Finally, we agree with the Customs Court that, in the absence of actual sales at prices meeting the statutory requirements, appraisement should have been made on the basis of the prices, otherwise in accordance with the statutory provisions, at which the goods were offered. As we said in *Aceto Chemical,* "We think this is such an absence as Congress intended to bring into effect the expressly stated alternative 'or * * * offered for sale * * *'." 51 CCPA at 127. While the evidence that the f. o. b. Montreal prices were actually offered to U. S. customers is not strong, this case went to trial before October 1, 1970, and we are accordingly bound by the old law concerning the scope of our review in reappraisement cases. The Customs Courts Act of 1970 § 122(a), Pub.L.No. 91–271 § 122(a), 84 Stat. 275, 281. We recently summarized that law in A. Zerkowitz & Co. v. United States, 58 CCPA 60, 66, 435 F.2d 576, 581 (1970), cert. den., 404 U.S. 831, 92 S.Ct. 72, 30 L.Ed.2d 60 (1971), as follows:

 * * * this court has long held that the findings of fact of an Appellate Term of the Customs Court in a reappraisement case will not be disturbed if there is "any substantial evidence" in support of those findings. Japan Import Co. v. United States, 86 F.2d

124, 131, 24 CCPA 167, 175, T.D. 48642 (1936); A. N. Deringer, Inc. v. United States, 53 CCPA 135, 137, C. A.D. 890 (1966). This we take to mean that it has been the rule that such findings should not be disturbed even though they are "clearly contrary to the weight of the evidence." [Footnote omitted.]

Whatever we might have done were we privileged to weigh appellee's evidence, we certainly cannot say that the circumstantial evidence on which the Customs Court relied does not meet the minimal standard set forth above.

For the foregoing reasons, the judgment of the Customs Court is affirmed.

Affirmed.

WORLEY, C. J., did not participate in the decision of this case.