**KURT ORBAN CO., INC.**

v.

**UNITED STATES.**

**C.D. 4697;  Court Nos. R70/1042, R70/1043.**

United States Customs Court.

May 17, 1977.

Samuel Frankel, New York City, for plaintiff.

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C. (Saul Davis, Trial Atty., New York City), for defendant.

RE, Chief Judge:

The question presented in these two cases, consolidated for purposes of trial, is the correct dutiable value of certain steel bars exported from Kobe, Japan on August 28, 1969, and entered at the port of Detroit, Michigan on October 17, 1969. The merchandise was appraised on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956 (19 U.S.C. § 1401a(b)).

The steel bars in entry 128466 (Court No. R70/1042) were sold to plaintiff by Nissho-Iwai Co., Ltd., of Tokyo, Japan (Nissho) through Nissho-Iwai American Corporation, its subsidiary in New York, for $147.80 (U.S. currency) per metric ton c. & f., Detroit, Michigan. The merchandise in entry 128467 (Court No. R70/1043) was contracted for by the same parties at $134.48 and $136.69 (U.S. currency) per metric ton c. & f., Detroit, Michigan.

The appraisements were made by the appraising officer on a *per se*, or unitary basis, arrived at by adopting the total c. & f. Detroit price with an allowance for the invoiced cost of ocean freight, and the invoiced "estimated discharging cost from vessel to pier in Detroit."

Export value is defined in section 402(b) of the Tariff Act of 1930, as amended, as follows:

"(b) For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States."

Plaintiff contends that, although the appraisements were returned as indivisible units, they are nevertheless constructively separable in that they can be broken down into alleged f.a.s. [free along side (vessel)] prices, plus certain specified costs listed on the special customs invoices. The f.a.s. prices, plus listed costs, total the c. & f. contract prices. In addition to the ocean freight and discharging costs, the special customs invoices set forth the following charges:

(1) "Loading Charge in Japan from Barge onto Vessel,"
(2) survey and tally fees, and
(3) insurance and agency fees.

The record does not explain the nature of the survey and tally fees, or when they accrued. Together with the insurance and agency fees, they are treated by plaintiff as part of the loading charges.

It is plaintiff's position that, since these charges comprise part of "ocean freight," which is a nondutiable charge under the export value statute, they are all nondutiable, and should have been deducted from the appraiser's return of value.

Plaintiff, concentrating on the loading charges which allegedly constitute about 98% of the amounts in dispute, contends that, regardless of the terms or circumstances of sale, loading costs are nondutiable charges. It submits that they are either like, or part of, "ocean freight" since they are costs which accrue subsequent to exportation. Plaintiff therefore contends that they cannot be part of export value as that term is defined in section 402(b).

Plaintiff argues, alternatively, that whether or not loading charges, like ocean freight, must always be treated as nondutiable, the goods in issue were freely offered and available for sale at the buyers' option, on other terms, including f.a.s. terms. Sales on an f.a.s. basis, plaintiff contends, do not include loading charges which are the responsibility of the purchaser. Since all of the disputed charges are regarded by plaintiff as "loading charges," the specific question presented is whether these loading charges are dutiable under the pertinent statutory provision which defines the export value of imported merchandise.

Plaintiff relies upon the judicially established principle that, for appraisement purposes, loading and inland freight charges are part of dutiable value if the merchandise can only be purchased in the principal markets of the exporting country for exportation to the United States at prices which include such charges. Conversely, if it can be shown that the merchandise was freely offered for exportation in the principal markets at prices which excluded such charges, they do not constitute part of dutiable value. *Albert Mottola v. United States*, 46 CCPA 17, C.A.D. 689 (1958), citing *United States v. Paul A. Straub & Co., Inc.*, 41 CCPA 209, C.A.D. 553 (1954). Accordingly, plaintiff asserts that, on the record, it has established that the merchandise could have been purchased at the f.a.s. prices shown on the special cus-

toms invoices. The f.a.s. prices are the alleged sales prices exclusive of the loading and other disputed charges.

Defendant argues that the *per se* appraisements are not constructively separable since there is no evidence that the appraising officer adopted any or all of the various enumerated charges shown on the customs invoices (loading, survey and tally, insurance and agency fees), and included them in his calculation of the appraised values. The defendant therefore contends that, in the absence of separable appraisements, plaintiff was compelled, but failed, to prove every element of its claimed export values.

Defendant also contends that, even assuming the appraisements to be separable, the disputed charges were nevertheless properly included in export value. Its contention is predicated upon plaintiff's failure to establish that such or similar merchandise was freely offered for sale to all purchasers in the principal markets of the exporting country at f.a.s. prices, exclusive of the loading and other disputed charges.

At the trial, plaintiff called three witnesses: Mr. J. F. Gibson, Mr. Richard Lefler, and Mr. Masayoshi Homma. Mr. Gibson is vice-president of Retla Steamship Company which ships steel from Japan to the United States on chartered modern gear bulk carriers. He testified that when quoting a tariff rate for shipping steel, the quotation would include the ship's cost, loading and discharging costs, other "minor things," and fuel. In a sale of steel for exportation from Japan to the United States on a c. & f. American port basis, the seller, not the buyer, would usually contract with his company for shipment of the merchandise. The quoted price would also include a loading charge.

The witness stated that "conference" vessels quote a "berth term" or "liner term" rate, which is an all-inclusive rate covering the ship's cost, loading, discharging, and fuel. Nonconference or charter vessels generally contract on a "free-in, free-out [f.i.o.] basis," which covers only the ship's

cost, and does not include loading and unloading charges. On that basis, the shipper or the consignee attends to the loading and unloading.

Mr. Richard Lefler is the assistant vice-president of the plaintiff corporation who was responsible for the purchase of the merchandise in issue. He testified that plaintiff had a "variety of choices" regarding the terms of sale from Nissho, citing "c. and f., c.i.f., c.i.f. American port duty paid; f.o.b. inland carried duty, f.o.b. foreign port." The merchandise was purchased on a c. & f. Detroit basis, and the method of transportation was determined by the seller. During July and August 1969, plaintiff did not purchase steel bars from any Japanese trading house on terms other than c. & f., or c.i.f. port of entry.

Mr. Masayoshi Homma, of Nissho-Iwai American Corporation, testified that he was with Nissho in Japan in 1969, and was familiar with the purchase orders and confirmations of the shipments before the court. He stated that it has "always been Nissho's policy to sell our steel bars on any trade terms by buyer's preference," and that the selection of trade terms was made by its customers. Under the c. & f. contracts for the controverted merchandise, Nissho, which was responsible for providing freight, determined the mode of transportation. It used a charter vessel for which it contracted on a "free-in, free-out basis." Therefore, the ocean freight charge, and the other charges for which it contracted separately, are listed on the special customs invoices. If the merchandise had been shipped on a liner or berth term vessel, only one dollar figure, covering all the listed enumerated charges, would have been shown on the invoices.

During the pertinent period, on or about August 1969, Nissho did not sell steel bars for export to the United States on an f.o.b. or f.a.s. basis, but sold only on a c. & f. or c.i.f. basis pursuant to its customers' requests for quotations on c. & f. terms.

The court will first consider plaintiff's contention that the cost of loading goods

onto the vessel at the port of exportation is not one of the "expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States" (section 402(b)). In defining the export value of imported merchandise, section 402(b) expressly speaks of "all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States."

Plaintiff stresses that the lifting of cargo onto a vessel is "an act appropriate and necessary only for exporting," and that it is "the decisive step in severing the merchandise from the country of export." Thus, plaintiff asserts that loading charges are in the nature of ocean freight, which has long been held not to constitute a part of export value since it is a charge which accrues subsequent to the exportation of the merchandise. *United States v. The Heyman Co., Inc.*, 50 Cust.Ct. 564, A.R.D. 157 (1963); *United States v. Samuel Shapiro & Co. et al.*, 65 Treas.Dec. 1650, R.D. 3268 (1934); *The John Shillito Company v. United States*, 5 Treas.Dec. 555, T.D. 23851—G.A. 5170 (1902). Loading charges, however, have been held to be akin to inland charges which "accrue in the foreign country prior to shipment to the United States." *Plywood & Door Northern Corporation v. United States*, 62 Cust.Ct. 1044, 1047, A.R.D. 256 (1969).

■ It is well settled that where merchandise is offered for sale only at an f.o.b. price, or a price which always includes inland freight, and never at an ex-factory price or price excluding such costs, the inland freight charges are "bound up in," and form "an integral part of the purchase price." In these instances they are part of the dutiable value of the merchandise. *Albert Mottola v. United States*, 46 CCPA 17, C.A.D. 689 (1958), citing *United States v. Paul A. Straub & Co., Inc.*, 41 CCPA 209, C.A.D. 553 (1954); *United States v. Kurt Orban Company, Inc.*, 44 Cust.Ct. 759, A.R.D. 116 (1960); *Dan Brechner & Co. et al. v. United States*, 42 Cust.Ct. 707, A.R.D. 101 (1959).

In *Plywood & Door Northern Corporation v. United States*, 62 Cust.Ct. 1044, A.R.D. 256 (1969), birch plywood exported from Finland was freely offered for sale for exportation to the United States exclusively on a c.i.f. American port basis. The court held that the loading charges were not deductible from the c.i.f. prices in determining dutiable export value. In treating "loading charges like other inland charges," which accrue in the foreign country prior to shipment to the United States, the court stated:

"Accordingly, it is not significant that charges (inland freight or loading) may 'accrue' after the merchandise has been packed ready for shipment to the United States and has left the principal market. Indeed, the inland freight included in the unit values of the plywood involved in this case is conceded by appellant to be dutiable. Hence, as in *Straub [United States v. Paul A. Straub & Co., Inc.,* 41 CCPA 209, C.A.D. 553 (1954)]* and *Mottola [Albert Mottola v. United States,* 46 CCPA 17, C.A.D. 689 (1958)],* the important consideration here is that the price at which the merchandise was freely offered for sale in the principal market always included the disputed charge, and not that the loading charges accrued after the merchandise had left the principal market, viz., Helsinki.

Additionally, *since loading charges like other 'inland charges' accrue in the foreign country prior to shipment to the United States, they are not deductible from the c.i.f. selling price in determining export value* on the basis of the principle invoked with respect to ocean freight, which of course accrues subsequent to exportation. Thus, in *United States v. The Heyman Co., Inc.,* 50 Cust.Ct. 564, A.R.D. 157 (1963), a charge such as inland freight was distinguished from ocean freight, as follows (*id.* at 572):

' * * * Inland freight, under a f.o.b. foreign port contract, is an element of expense which accrues while the merchandise is in the foreign country of exportation and, as such, constitutes an appropriate element to be included in

the valuation. However, the statutory basis of value before us, namely, export value, admonishes us to reject as an element of value those charges which accrue subsequent to the time the merchandise leaves foreign shores. Such is the nature of ocean freight which, unlike inland freight, accrues subsequent to the time the merchandise is exported from foreign shores and, as such, cannot properly constitute an element of such valuation. *United States v. New England Foil Corp.*, 10 Cust.Ct. 596, 597, Reap.Dec. 5856. See also, *United States v. F. C. Gerlach & Co., et al.*, 7 Cust.Ct. 494, 504, Reap.Dec. 5443.' [Emphasis added.]" 62 Cust.Ct. at 1047.

Also pertinent is *Joseph Markovits, Inc. v. United States*, 56 Cust.Ct. 607, R.D. 11132 (1966) which held that "coolie hire, trucking, lighterage and incidental charges," included in a sale on an f.o.b. vessel basis, must be part of the dutiable export value. See also *American Commercial, Inc. v. United States*, 40 Cust.Ct. 690, R.D. 9072 (1958), which held that "go-down" charges, including lighterage to the vessel on which the goods were exported, were not deductible from an f.o.b. selling price in determining export value.

■ In view of the foregoing authority, it is the determination of the court that the loading charges are not charges which accrued subsequent to exportation of the merchandise. Accordingly, they were properly included as part of the export value of the merchandise in issue.

■ It was incumbent upon plaintiff to establish that the controverted merchandise which was sold on a c. & f. American port basis was freely sold or offered for sale in the ordinary course of trade to all purchasers at the invoice prices, less the disputed loading charges. *Albert Mottola v. United States*, 46 CCPA 17, C.A.D. 689 (1958).

■ There is no evidence in the record of this case of actual sales, or of offers of sale, of such or similar merchandise at the claimed f.a.s. prices exclusive of the disputed loading charges. Mere expressions of willingness to sell steel bars on any trade terms made by the buyer, as testified by Mr. Homma, do not establish a market price for the merchandise. As stated by Judge Richardson of this court in *Delmonico International Corp. v. United States*, 52 Cust.Ct. 656, A.R.D. 176 (1964):

> "What is actually done in terms of sales or offers of sale is what establishes a market price, and not merely what it is possible to do in the matter of sales or offers of sale. It has been held that a *willingness to sell* merchandise at a price is no evidence of a market price. See *Transatlantic Shipping Co., Inc., et al. v. United States*, 28 CCPA 19, C.A.D. 118, and *Golding Bros. Co., Inc. v. United States*, 6 Cust.Ct. 877, Reap.Dec. 5196. By the same token, the fact that merchandise *could have been sold* at a price is no evidence of a market price either." (Emphasis in original.)

See also *Joseph Markovits, Inc. v. United States*, 56 Cust.Ct. 607, R.D. 11132 (1966); *Louis Goldey Co., Inc., v. United States*, 55 Cust.Ct. 759, A.R.D. 196 (1965).

Mr. Lefler, who was responsible for purchasing the merchandise for the plaintiff, stated that he had a variety of choices as to the terms of purchase with Nissho, such as "c. and f., c.i.f., c.i.f. American port duty paid, f.o.b. inland carried duty, f.o.b. foreign port." It is significant, however, that he omitted any reference to doing business on an f.a.s. basis which plaintiff claims is the correct basis for determining the export values.

Plaintiff relies heavily on the testimony of Mr. Homma which, in its opinion, establishes offers to sell on an f.a.s. basis, or on any other basis. The language of section 402(b), however, expressly states "freely sold or, in the absence of sales, offered for sale." Therefore, as stated in the *Louis Goldey Co.* case, "[w]here there are actual sales, such sales are controlling and offers may not be considered." 55 Cust.Ct. at 764. See also *Luckytex, Ltd. v. United States*, 63 Cust.Ct. 659, A.R.D. 257 (1969).

■ Finally, even if plaintiff were able to show that the merchandise was freely available at the invoiced f.a.s. unit prices, less loading charges, it has failed to establish the separability of the appraisements with respect to the disputed charges. The appraisements at bar were made in unitary terms. They were not made in terms of a first cost or f.a.s. price plus the disputed charges, either of which type of appraisement has been held to be separable. Under the so-called doctrine of separability, the party challenging the appraisements may rely upon the presumption of correctness as to all elements of the appraisements which he does not seek to dispute. *Haddad & Sons, Inc. v. United States*, 54 Cust.Ct. 600, R.D. 10942 (1965), *aff'd*, 56 Cust.Ct. 792, A.R.D. 205 (1966).

■ When an appraisement is expressed as a single indivisible unit, it is not on its face separable. It may, nevertheless, be constructively separable if there is evidence that the appraising officer, in fact, calculated the appraised value by adopting the specific amounts or charges shown on the invoices for the merchandise. *United States v. Gehrig, Hoban & Co., Inc.*, 54 CCPA 129, C.A.D. 924 (1967); *United States v. Bud Berman Sportswear, Inc.*, 55 CCPA 28, C.A.D. 929 (1967).

■ It is apparent from the appraising officer's red check marks placed on the Nissho-Iwai American Corporation invoice in entry 128467 and on the customs invoice in entry 128466 that allowance was made for the stated ocean freight and discharging costs, which are shown on each as "ND" (nondutiable).

It is nowhere indicated, however, on either invoice or through other evidence of record, that the appraising officer and the district director accepted or adopted the f.a.s. prices, and the specific itemized loading charges (including survey and tally fees, and insurance and agency fees) enumerated on the invoices, in calculating the statutory export values of the merchandise. Thus, there is nothing of record from which the court can determine, for purposes of separa-

bility, which charges, or in what amounts, they were utilized by the appraising officer in determining the appraised values of the merchandise. *Bowl-O-Beauty Co. v. United States*, 75 Cust.Ct. 119, C.D. 4615 (1975); *Concord Electronics Corp. v. United States*, 69 Cust.Ct. 241, A.R.D. 304, 345 F.Supp. 1000 (1972), *appeal dismissed*, 60 CCPA 185 (1972).

The fact that the appraised values were equivalent to the c. & f. prices shown on the invoices, less the stated ocean freight and unloading charges, does not establish that the appraisements embraced the listed charges in the same amounts as were shown on the invoices. *Bowl-O-Beauty Co. v. United States, supra; Luckytex, Ltd. v. United States*, 63 Cust.Ct. 659, A.R.D. 257 (1969), *appeal dismissed*, 57 CCPA 141 (1970). Consequently, the appraisements cannot be deemed separable.

It was thus incumbent upon the plaintiff, in challenging the presumptively correct appraised values, to establish every material element of its claimed values. The plaintiff has not met this burden. There is no evidence of sales to all purchasers at the f.a.s. prices for exportation to the United States within the framework of the export value formula set forth in section 402(b) of the Tariff Act of 1930, as amended.

The court has noted plaintiff's reliance upon a letter, dated March 2, 1970, that it received from the director of the division of appraisement and collections of the Customs Service. The letter was sent in response to a letter, dated October 28, 1969, by the plaintiff for a decision as to the dutiability of loading charges in the valuation of merchandise sold at c. & f. port of destination prices. No reliance may be placed upon a letter issued subsequent to the appraisement of the controverted merchandise. Furthermore, plaintiff's request posited the existence of f.a.s. terms, and stated that all charges subsequent to delivery f.a.s. (including loading charges) were to be paid by "shipper" who would, in that event, be the buyer. The facts assumed in the letter of inquiry are not the facts found

in the case at bar. In view of the plaintiff's failure to establish the existence of f.a.s. sales, the question posed of the customs officials does not apply to the case before the court.

The letter of the director of the division of appraisement and collections stated that where merchandise is only offered for sale at a uniform c.i.f. or c. & f. price to any United States port, with varying charges for ocean freight, "only the lowest actual freight charge is deductible." It may be added to these comments on the letter that the words "freight charge," as used in the letter, cannot be construed, as plaintiff suggests, as expressly including loading charges. In any event, the alleged loading charges incorporated by the appraising officer in the appraised values are not ascertainable, and the court is not bound by any statement in the letter in response to plaintiff's inquiry.

Since plaintiff has not borne its burden of proof in rebutting the presumptively valid appraisements, the appraised values are affirmed, and the appeals for reappraisement are dismissed. Judgment will issue accordingly.