MILLER, Judge.
This appeal is from the judgment of the United States Customs Court in Kurt Orban Co. v. United States, 78 Cust.Ct. 122, C.D. 4697, 432 F.Supp. 198 (1977). The parties agree that appraisement of the merchandise was properly based on export value as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 19 U.S.C. § 1401a(b).[1] The issue is the propriety of the Government’s inclusion of charges for loading the merchandise in Japan “from Barge onto Vessel” bound for the United States in determining the export value here involved. The Customs Court held that such inclusion was proper. We reverse.

Facts

The merchandise consists of steel bars exported from Kobe, Japan on August 28, 1969, and entered at the port of Detroit, Michigan on October 17, 1969. The steel bars were sold to appellant by Nissho-Iwai Co., Ltd., through its American subsidiary (Nissho) at various C. & F. Detroit[2] prices. On each special customs invoice (Customs Form 5515), the overseas transportation charges for the merchandise were broken down rather than shown as a single total, thus:
*1127 Element of Transportation Entry Entry
_Expense_ 128466 128467
(a) Ocean freight (free in, free out) 511.02 $4038.89
(b) Loading charge in Japan from barge onto vessel 119.24 942.21
(c) Estimated discharging cost from vessel to pier in Detroit 174.77 1381.30
(d) Survey and tally fees 17.03 134.63
(e) Other various charges (insurance, agency fee, etc.) 13.63 107.70
The appraisements were made by the appraising officer on a per se, or unitary, basis by adopting the C. & F. Detroit prices minus allowances for the invoiced cost of ocean carrying and unloading charges (items (a) and (c) above).[3] Appellant contends that further allowance should have been made for items (b), (d) and (e)[4]

Opinion Below

Relying principally upon Plywood & Door Northern Corp. v. United States, 62 Cust.Ct. 1044, A.R.D. 256, 304 F.Supp. 1030 (1969), the Customs Court concluded that the loading charges are akin to inland freight charges since they “accrue in the foreign country prior to shipment to the United States” and are “not charges which accrued subsequent to exportation of the merchandise.” Accordingly, it held that the loading charges, like inland freight charges, when constituting “an integral part of the purchase price,” are part of the dutiable value of the merchandise. It noted that there is no evidence of actual sales, or of offers of sale, of such or similar merchandise at the claimed F.A.S. prices, exclusive of the disputed loading charges.[5] The Customs Court further noted that mere willingness to sell on any trade terms is insufficient when there are no sales at the claimed F.A.S. prices exclusive of the disputed loading charges. The Customs Court also rejected appellant’s argument that the ap-praisement was separable with respect to the disputed charges.
OPINION
Ocean freight charges have long been held not to constitute part of the export value of merchandise. United States v. Samuel Shapiro & Co., 65 Treas. Dec. 1650, R.D. 3268 (1934); John Shillito Co. v. United States, 5 Treas.Dec. 555, T.D. 23851 (1902); accord, Josef Manufacturing, Ltd. v. United States, 62 Cust.Ct. 763, 767, R.D. 11616, 294 F.Supp. 956, 959 (1969), aff’d, 64 Cust.Ct. 865, A.R.D. 274, 314 F.Supp. 51 (1970), aff’d, 460 F.2d 1079, 59 CCPA 146, C.A.D. 1057 (1972). It is also well settled that inland freight charges are part of the export value only where the merchandise is offered for sale at an F.O.B. price or a price which includes the inland freight charge, and never where the sale is at an ex-factory price. Albert Mottola v. United States, 46 CCPA 17, C.A.D. 689 (1958); United States v. Paul A. Straub & Co., 41 CCPA 209, C.A.D. 553, cert. denied, 348 U.S. 823, 75 S.Ct. 37, 99 L.Ed. 649 (1954). Therefore, the dispositive question is whether the disputed loading charges are to be identified with ocean freight charges and excluded from export value or with inland freight charges, which may or may not be part of the export value. Only if the loading charges should be identified with inland freight charges would it be necessary to consider whether the merchandise was freely sold or, in the absence of sales, of *1128 fered for sale at a price without the disputed charges.[6]

A. Trade Practices

Mr. J. F. Gibson, vice president of the Retía Steamship Company, which ships steel from Japan to the United States, testified [7] that on “conference” vessels a quotation for ocean freight charges is in “berth terms,”[8] which include in a single figure the combined charges of loading, ocean carriage, and unloading, plus related “minor things.” This single figure is used on bills of lading and invoices since the loading, carrying, and unloading is paid by the shipper. However, if the shipment is by a charter or nonconference vessel, the price is usually quoted in “free in, free out” terms, under which the cost of each component of the total freight charge — loading, carrying, and unloading — is itemized. This is because the charter shipper only presents the ship for loading and unloading at the respective ports.
Uncontested testimony below indicates that if the shipping freight charges are stated as a single dollar amount, the uniform practice of the Customs Service is to deduct the entire amount. Thus, the Customs Court’s decision would have this anomalous result: for shipments on conference vessels (which use berth terms), the total freight charge (including loading) would be deducted in calculating export value; but, for shipments on nonconference vessels (which use free in, free out terms), the loading charge would not be deducted. Nevertheless, regardless of the type or ownership of the vessel used for exportation, the importer ultimately bears the cost of all freight charges including loading.[9] This court in United States v. Josef Manufacturing, Ltd., 460 F.2d at 1082, 59 CCPA at 150, stated that the freight charges from the principal market in the country of exportation “should be treated in the same fashion” regardless of the mode of transportation. Thus, whether the vessel used for exportation is a conference or a chartered vessel should not be determinative of the treatment of the ocean freight charges; more particularly, it should not be determinative of whether the loading charges are included in the export value of the merchandise.[10]
We note from the testimony below that in the common parlance of importers and marine carriers, ocean freight includes loading as well as transportation and unloading.[11]

B. Case Law

While section 402(b) makes no mention of deductions, it is clear that the value contemplated is the per se price of the goods in the principal market of the country of exportation, inclusive of the cost of packing and other expenses incidental to the placing of the goods in a condition for shipment.[12] Any charges costs, or expenses *1129 accruing subsequent to the time the merchandise is in the principal market “in condition, packed ready for shipment to the United States,” even though included in the offered price, are not ordinarily part of the export value for tariff purposes.[13] A. W. Fenton Co. v. United States, 61 Cust.Ct. 437, 446 R.D. 11556, application for review dismissed, 61 Cust.Ct. 613, A.R.D. 246 (1968); United States v. International Commercial Co., 28 Cust.Ct. 629, 636, R.D. 8112 (App.Term 1952). Accordingly, ocean freight has been determined not to be part of the export value because it accrues subsequent to the time the merchandise is in the principal market in condition ready for shipment.[14] John A. Steer & Co. v. United States, 30 Cust.Ct. 504, R.D. 8196 (1953), cited with approval in United States v. Paul A. Straub & Co., supra; United States v. Samuel Shapiro & Co., supra.
The rationale of the Customs Court’s decision that loading charges are includable in dutiable value is that these charges accrue within the country of exportation prior to shipment to the United States. Although the Government cites several cases for the proposition that “loading charges and/or pier charges were held to be part of the export value of the merchandise,”[15] only one case, Plywood & Door Northern Corp. v. United States, supra, which was relied upon by the trial court, merits detailed discussion. After distinguishing the dutiable treatment of ocean freight and inland freight charges, the Customs Court, supra at 1047, 304 F.Supp. at 1033, concluded;
Accordingly, it is not significant that charges (inland freight or loading) may “accrue” after the merchandise has been packed ready for shipment to the United States and has left the principal market. Indeed, the inland freight included in the unit values of the plywood involved in this case is conceded by appellant to be dutiable. Hence, as in Straub and Motto-la, the important consideration here is that the price at which the merchandise was freely offered for sale in the principal market always included the disputed charge, and not that the loading charges accrued after the merchandise had left the principal market, viz., Helsinki.
Additionally, since loading charges like other “inland charges” accrue in the foreign country prior to shipment to the United States, they are not deductible from the c. i. f. selling price in determining export value on the basis of the principle invoked with respect to ocean freight, which of course accrues subsequent to exportation.
Although the opinion contains little analysis, apparently the court’s rationale was that loading charges are like inland freight because they (1) accrue after the merchandise has been packed ready for shipment, and “additionally; ” (2) accrue in the foreign country prior to shipment to the United *1130 States. There are several weaknesses in this reasoning.[16]
Ocean freight and unloading charges obviously meet the first condition (accrue after the merchandise is packed); yet they are not dutiable and are treated differently from inland freight charges. The “additional” condition (accrues in the foreign country prior to shipment[17]), which was particularly emphasized by the Customs Court in this case, ignores the fact that the loading process is an essential step in the ocean transportation service. Moving the merchandise from a barge to a vessel bound for the United States necessarily occurs subsequent to arrival of the merchandise in the principal market of the country of exportation, packed ready for shipment (which is the reason that ocean freight is not dutiable). The loading charges accrue necessarily and directly as a result of exportation.[18]
In view of the foregoing, we hold that the disputed loading charges here, like oeean freight charges, are not part of the export value of the goods. To do otherwise would not only be contrary to the general parlance of the shipping trade, but would make the nature of the carrying vessel (conference or charter) determinative of export value.
The disputed loading charges are to be deducted whether or not the goods were freely sold or, in the absence of sales, offered for sale at a price without the loading charges. See note 6, supra, and accompanying text. Therefore, the proof needed to establish the amount of these charges for appropriate reduction in the appraised value is the same as that required for the ocean freight carrying and unloading charges. Since the charges on the special customs invoices have not been questioned, and since the appraiser accepted the values listed on these invoices for the ocean freight carrying and unloading charges, the value of the loading charges stated thereon should be accepted.[19]
*1131 The judgment of the Customs Court is reversed.
REVERSED.

. 19 U.S.C. § 1401a(b) reads:
(b) For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

. The term “C. & F.” means that the sale price includes in a lump sum, “cost” of the goods and “freight” to the named destination. The term “C.l.F.” indicates that the price covers cost, insurance, and freight. The term “F.A.S.” means alongside ship; hence, an F.A.S. price is that of the goods delivered in good order to the dock from where the ship is to sail.

. On the face of each special customs invoice, the appraiser initialed and wrote “ND” (nondu-tiable) next to items (a) and (c) and subtracted their total from the C. & F. price

. The parties have not separately argued the deduction of the “survey and tally fees” and the “other various charges (insurance, agency fee, etc.)”; nor did the Customs Court treat them separately from the loading charges in Japan. Accordingly, all such charges will be presumed to stand or fall together.

. The Customs Court found that during the pertinent period (“on or about August 1969”), appellant did not purchase steel bars from any Japanese trading house on terms other than C. & F. or C.I.F. port of entry. Moreover, during this period, Nissho did not sell steel bars for export to the United States on an F.O.B. or F.A.S. basis, but only on C. & F. or C.I.F. terms pursuant to its customers’ requests.

. Compare United States v. Josef Mfg., Ltd., 460 F.2d 1079, 59 CCPA 146, C.A.D. 1057 (1972), where the court said that even when the merchandise is only sold at a C.I.F. price — including in one lump sum the cost of the goods, insurance, and freight to the named destination — the cost of the insurance and freight must be deducted from the C.I.F. price to obtain “ ‘the price ... of the merchandise undergoing appraisement.’ ”

. Similar testimony was given by Mr. Masayo-shi Homma of Nissho.

. This is the same as “liner terms.”

. The contract notes between appellant and Nissho indicate that charges for the entire freight package are to be treated as adjustable up or down; thus, the appellant bore the cost of any price increases.

. Nor should the method of invoicing be determinative of the dutiable value. Appellant observes that “[e]ven in free in — free out shipments the three components could be totalled and expressed as a sum.”

. We further note that it appears from the record not to be unusual for the Customs Service to deduct loading charges in making an appraisement. See Ontario Stone Corp. v. United States, 65 Cust.Ct. 753, 757, R.D. 11727, 319 F.Supp. 923, 926 (1970), where the loading charges were deducted (finding No. 3).

. Josef Mfg., Ltd. v. United States, 62 Cust.Ct. 763, R.D. 11616, 294 F.Supp. 956 (1969), aff’d, 64 Cust.Ct. 865, A.R.D. 274, 314 F.Supp. 51 (1970), aff’d, 460 F.2d 1079, 59 CCPA 146, C.A.D. 1057 (1972).

. The few deviations from this general proposition are easily distinguishable. In Schieffelin & Co. v. United States, 504 F.2d 1147, 62 CCPA 7, C.A.D. 1135 (1974), and Erb & Gray Scientific, Inc. v. United States, 53 CCPA 46, C.A.D. 875 (1966), the disputed charges involved were services (advertising of the product in the United States and necessary service and installation of the product, respectively) bargained for and inextricably bound to the goods; whereas in the present case, the disputed charges are inextricably bound to transportation, discussed infra.

. It is also not a cost or charge of the kind described in the statute. John Shillito Co. v. United States, supra at 556.

. We find unpersuasive the Government’s citation to Bud Berman Sportswear, Inc. v. United States, 469 F.2d 1107, 60 CCPA 34, C.A.D. 1077 (1972), and Louis Goldey Co. v. United States, 55 Cust.Ct. 759, A.R.D. 196 (1965), inasmuch as the question whether loading charges are part of the export value was not addressed. Indeed, it is not at all clear that loading charges were included in the disputed charges. The decision in Reliance Trading Corp. of Illinois (Eider) v. United States, 53 Cust.Ct. 352, R.D. 10785 (1964), went off on burden of proof. American Commercial Inc. v. United States, 40 Cust.Ct. 690, R.D. 9072 (1958), is unhelpful since the conclusion of the single judge of the Customs Court that lighterage from dockside to the vessel was not deductible in determining export value, simply rested on his statement that “When costs are included in price, there is no provision for subtracting them, or any of them, in order to arrive at export value.” Id. at 692. This is clearly wrong since ocean freight and unloading charges must be excluded.

. In all fairness to the Customs Court, the significance of the different treatment between ocean freight and inland freight charges where the price always includes the disputed charge (which was the situation in Plywood) may not have been appreciated since the opinion predates this court’s decision in United States v. Josef Mfg., Ltd., supra, albeit subsequent to the Customs Court’s decision in that case.

. This language apparently comes from United States v. Heyman Co., 50 Cust.Ct. 564, A.R.D. 157 (1963), which suggests that ocean freight is not part of the export value since it accrues subsequent to the time the merchandise leaves the foreign shores. However, the exact point in time (e.g., after made ready for shipment, or in the principal market and made ready for shipment, or immediately after being loaded, or after the boat leaves the harbor) was not critical to the Heyman decision, and the court did not attempt to precisely determine the cutoff point. Also, we note that the two cases cited in Heyman (United States v. New England Foil Corp., 10 Cust.Ct. 596, 597, R.D. 5856 (1943), and United States v. F.C. Gerlach & Co., 7 Cust.Ct. 494, 504, R.D. 5445 (1941)) do not denominate the test as “accrues subsequent to the time the merchandise is exported from the foreign shore.”

. Once the cargo is placed on a vessel bound for the United States, it would have to be unloaded, at additional expense, in order to be available for use in the exporting country (either for use domestically or for alternative exportation). Movement from a barge to shipboard is consistent only with exportation. Packing and inland freight charges, on the other hand, usually add to the economic value of the goods in the country of exportation. A subsequent change in the destination country or a use for consumption in the exporting country ordinarily would not negate the value of such charges.

. The dissenting opinion agrees that loading charges, like ocean freight carrying and unloading charges, are not part of the export value, but agrees with the Customs Court’s conclusion that appellant “failed to carry its burden of proof on the issue of separability.” It must be noted, however, that the Customs Court reached this conclusion only after it had erroneously held that loading charges were akin to inland freight charges and, thus, could be part of the export value. Under our holding, the “separability doctrine” is never reached, and charges which are not part of the export value are treated as in United States v. Josef Mfg., Ltd., supra. Moreover, the evidence of record, particularly the special customs invoices, establishes the C. & F. Detroit price, the loading charges, and the fact that the C. & F. price included the loading charges. We have been directed to no evidence to the contrary, nor has the Government sought to challenge the correctness of these values.